[Civ. No. 21152. Second Dist., Div. One. July 27, 1956.]

OIL BASE, INC. (a Corporation), Plaintiff and Appellant, v. TRANSPORT INDEMNITY COMPANY (a Corporation) et al., Defendants and Appellants.

[Civ. No. 21158. Second Dist., Div. One. July 27, 1956.]

ELMO HERBERT SCHERER, Plaintiff and Appellant, v. TRANSPORT INDEMNITY COMPANY (a Corporation) et al., Defendants and Appellants; HARDWARE MUTUAL INSURANCE COMPANY OF MINNE-SOTA (a Corporation), Respondent.

454

William W. Waters and Martin, Hahn & Camusi for Plaintiff and Appellant in Civ. No. 21152.

Dudley Grey for Plaintiff and Appellant in Civ. No. 21158.

Robert W. Stevenson and John F. O'Hara for Defendants and Appellants.

C. F. Jorz and Gary W. Sawtelle for Respondent in Civ. No. 21158.

NOURSE (Paul), J. pro tem.*—These actions for declaratory relief both involve the interpretation to be placed upon the same policies of insurance. The cases were consolidated for the purposes of the trial, but separate findings of fact and judgments were entered in each action.[1]

Hereinafter the first case named in the title will be called the Oil Base action; and the second one, the Scherer action.

In the Scherer action plaintiff, by his complaint, sought to have it declared that he was an insured under the policies of insurance issued by each of the insurance companies who is a defendant, and was entitled as such an insured to be indemnified in accordance with the provisions of the various policies. He joined as defendants Hardware Mutual Insurance Company (hereinafter called Hardware) ; Transport Indemnity Company (hereinafter called Transport) ; Security Mutual Casualty Company (hereinafter called Security) ; Mercury Transport Company (hereinafter called Mercury) ; Southwest Tank Lines (hereinafter called Southwest) ; and others.

The plaintiff Oil Base, the named insured in the policy issued by the defendant Hardware and one of the named insureds in the policies issued by defendant Transport and defendant Security, sought by its amended and supplemental complaint to have its rights as against Transport, Security, and Hardware, under the policies issued by them, and the obligations of said insurers under said policies, declared. It also sought a money judgment on account of attorney's fees and costs of defense of certain actions hereinafter mentioned brought against it, and for the sum of $100,000 against

---

*Assigned by Chairman of Judicial Council.

[1]The record here well illustrates the merit of the rule enunciated in *Wolfson* v. *Beatty*, 118 Cal.App.2d 392 [257 P.2d 1017], that where actions are consolidated there should be but one set of findings and one judgment.

Hardware on account of payments made in the settlement of the claim of one Smith, to which claim further reference is hereinafter made.

The facts are not in dispute, and the findings made by the trial court in each action insofar as any issues here are concerned are not based upon any conflict in the evidence but upon the trial court's interpretation of the various contracts involved.

The relevant facts are:

The defendant (in the Scherer action) Southwest was the owner of a certain tractor and semitrailer. By lease dated June 1, 1952, it leased this equipment to the defendant Mercury for a period of one year. The lease provided that during the term of the lease the equipment should be solely and exclusively under the direction and control of Mercury.

On the 5th of November, 1952, Mercury leased the equipment to Oil Base for a period of one month. The purpose of the lease was to enable Oil Base to transport certain drilling mud to Texas by use of its own equipment, Mercury not having an interstate commerce license which would enable it to contract this work. This lease provided that Mercury would furnish required lubricants and fuel and one or more competent drivers, and that during the period of the lease the equipment should be "solely and exclusively under the direction and control of the Lessee."

Pursuant to the lease last mentioned, the equipment was delivered to Oil Base at its plant in Compton, California, on the 5th of November, 1952. At that time the equipment was in the charge of Scherer and another driver furnished by Mercury; at that time the truck was loaded by Oil Base, and Scherer and his coemployee were given detailed directions by Oil Base as to the route to be followed and the times of day during which they should travel while in Texas.

On the morning of November 8, 1952, while returning to Compton, California, from Texas, the equipment, while being driven by Scherer, collided with a vehicle driven by one Smith and in which one Lowe, the owner of the vehicle, was riding. In this accident both Smith and Lowe sustained serious injuries.

At the time of the accident the following policies of insurance were in effect: Policy Number CGAL 476238, issued by Hardware to Oil Base as its named insured, with limits of liability of $100,000 *each person, $300,000 each accident.* By the insuring agreements of this policy Hardware undertook,

under coverage A, to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . at any time resulting therefrom, sustained by any person and caused by accident." By the insuring agreements it further undertook to "defend any suit against the insured alleging such injury. . . ." The word *insured* is defined by the insuring agreements of the policy as follows:[2] "The unqualified word 'insured' includes the named insured and also includes . . . (2) under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:

". . . . . . . . . . .

"(d) with respect to any hired automobile, to the owner thereof or any employee of such owner."

By the conditions of the policy the term *owned automobile* is defined as "an automobile owned by the named insured." The term *hired automobile* is defined as one used under contract by or loaned to the named insured and which is not owned or registered in its name. The term *non-owned automobile* is defined as "any other automobile," the term *automobile* being defined as a "land motor vehicle or trailer. . . ."

It is further provided by the conditions of the policy as follows: "Such insurance as is afforded by this policy for bodily injury liability . . . shall comply with provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use during the policy period of any automobile insured hereunder, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. . . ."[3]

Transport issued its policy Number 12-101 in which Mercury Transport Company, Mercury Tank Transport, and Southwest

---

[2]This clause is hereinafter referred to as the "omnibus clause."

[3]The provisions of this as well as other policies involved as to "other insurance" are quoted *post*.

Tank Lines were named as insureds, the company's liability under which was $10,000 *each occurrence*. By rider executed and attached to the policy at the time of the lease made by Mercury to Oil Base, Oil Base was named as an insured.[4]

By the insuring agreements of this policy Transport agreed "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay for damages, arising out of the occupation of the named insured, as a result of bodily injury. . . ." It further agreed to defend or settle all suits filed against the insured and to pay all costs of investigation and litigation.

By the terms of the policy the term *named insured* is defined to mean the insured named in the declarations. The unqualified word *insured* is defined to mean "any partner, executive officer, managing employee, director or stockholder" of the named insured while acting within the scope of his duties.

Paragraph 6 of the conditions of the policy provides in substance that the insurance afforded by the policy shall comply with the provisions of the motor vehicle responsibility law of any state or province, and for all practical purposes is identical with that contained in the policy issued by Hardware.

Security issued to the same named insureds as are named in Transport's policy Number 12-101 its policy Number T-212, entitled "Excess Loss Contract." By the declarations of the policy it is provided, "Company's Maximum Liability: $40,000.00 each occurrence over $10,000.00 primary each occurrence, such primary coverage with Transport Indemnity Company. . . ." The only persons named as insureds in this policy are the persons so named in the declarations. There is no omnibus clause such as that contained in the Hardware policy.

By section 1 of the insuring agreements the company agreed *to indemnify the insureds for all sums which they should by law be liable to pay and shall pay*, or by final judgment be adjudged liable to pay, on account of bodily injuries sustained by any person. By section 2 it is in substance provided that Security should only be liable for the ultimate net loss in excess of $10,000 or of such greater amount as the

---

[4]The effect of the endorsement as reformed by the court below is to make Oil Base a named insured in both policies issued by Transport and in the policy issued by Security. This is made clear by paragraph XIX of the findings.

insured shall be covered by primary insurance, but only up to the sum of $40,000. By section 3 it is agreed that liability under the policy should not attach until the insureds or their primary carriers should have paid the amount named in item 5 of the declarations.

Coincidentally with the issuance of its policy Number 12-101 and Security's policy Number T-212, Transport issued its policy No. 12-102, the named insureds in this policy being the same as in its policy Number 12-101. The limit of liability stated in the policy was $950,000 in excess of $50,000 each occurrence.

Specifically as to the policy being one of excess rather than primary insurance, the policy contains the following provisions:

"EXCESS PROVISIONS:

"In consideration of the premium at which this policy is written, it is hereby agreed that the Company's limit of liability hereunder shall apply as excess insurance over underlying primary insurance policies issued by Transport Indemnity Company for $10,000.00 and issued by Security Mutual Casualty Co. for $40,000.00.

"Notwithstanding anything in this policy to the contrary, it is further agreed that this policy is subject to the same terms (except as respects the premium, the limit of liability, and except as otherwise provided herein) as are contained in or may be added to the primary insurance policy for $10,000 issued by the Transport Indemnity Company.

" . . . . . . . . . . . ."

Except as to the limits of liability and the provisions of the declarations as to the coverage being excess coverage, the insuring agreements and conditions of the policy are identical with those of Transport's policy Number 12-101.

Shortly after the occurrence of the accident in question, Oil Base reported it to both Hardware and Transport, and upon the filing of the actions by Smith and Lowe, tendered the defense of these actions to both companies. Each of the companies denied obligation to defend the actions upon the ground that their policies were policies of excess insurance and the policy of the other company was the primary coverage, and that therefore the issuer of that policy was the one obligated to defend the actions. Scherer also demanded of each company that it assume the defense on his behalf of the actions brought by Smith and Lowe, and both companies denied liability upon the grounds that he (Scherer) was not

an insured under their respective policies. Scherer and Oil Base then employed their own counsel to defend these actions.[5]

After the commencement of the present actions for declaratory relief, the claim of Smith was compromised and he was paid the sum of $360,000. Of this sum, $260,000 was paid by Transport and its excess carriers, and $100,000 was paid by Oil Base, this sum being loaned it by Transport under an agreement that it should be repaid, without interest, only out of such money as it might recover from Hardware upon its policy. All parties agreed that the settlement should not prejudice the claims of Oil Base or its subrogees against Hardware, and that the amount paid was reasonable. After the judgments were entered in the present actions, the claim of Lowe was settled for the sum of $75,000.[6]

By its judgment in the Scherer action, the trial court declared that: (1) Scherer was not entitled to coverage or protection under the Hardware policy; (2) Scherer was not entitled to protection under the Transport policies or the Security policy; (3) Neither Mercury nor Southwest was entitled to coverage or protection under the Hardware policy; (4) Mercury and Southwest were entitled to protection under the Transport policies and the Security policy; (5) Transport's liability with respect to the claims of Smith and Lowe under its policy Number 12-101 was a sum not exceeding $10,000; (6) Security's liability upon the claims of Smith and Lowe was a sum not exceeding the sum of $40,000, and this liability attached only after the full utilization of the indemnity provided by Transport's policy Number 12-101; (7) Transport's liability under policy Number 12-102 as to the claims of Smith and Lowe was in a sum not exceeding $950,000, and this liability attached only after the full utilization of the indemnity provided by its policy Number 12-101 and Security's policy, to wit: indemnity in the aggregate sum of $50,000; (8) Transport and Security were obligated to defend and to pay the cost of investigation and of the defense of Mercury and Southwest in the actions brought by Smith and Lowe. It further declared that the judgment

---

[5] In each of the answers filed by the defendants in the actions brought by Smith and Lowe, negligence on the part of Scherer is denied and contributory negligence of the plaintiff is alleged.

[6] We are so advised by counsel in their briefs and we assume for the purposes of our decision that that compromise was made under an agreement by the parties of like effect to that under which the Smith claim was settled.

was not one for the payment of money but only one declaring the rights, duties, and obligations of the parties.

From this judgment Scherer has appealed as against that portion of the judgment which declares he is not entitled to protection under any of the policies issued by the defendants Hardware, Transport, and Security.

Transport, Security, Southwest, and Mercury have appealed from that portion of the judgment which affects them. We will consider the questions raised by their appeals in connection with their appeal from the judgment in the Oil Base action.

### SCHERER'S APPEAL

The trial court found that at the time and place of the accident in which Smith and Lowe were injured, Scherer was driving the equipment in question with the consent and permission of Oil Base and Mercury; that he was "the agent but not the employee of OIL BASE and was acting in the scope and course of his employment as such agent." It further found that at said time Scherer was also acting as the general employee of Mercury but that Oil Base had the exclusive possession and control of the equipment and "had the right to exercise supervision and control over" Scherer.

After findings which consist of recitals of the effect of or quotations from the policies of insurance issued by Hardware, Transport, and Security, the court reached the conclusion and found as a fact that Scherer was not an insured under any of the policies in question. In its conclusions of law it stated the same conclusion.[7]

It was not contended at the trial that Scherer was an insured under the policies issued by Transport and Security, nor in the briefs originally filed on this appeal did Scherer contend that the court erred in its finding and conclusion that he was not entitled to protection under those policies.

■ After the oral argument on this appeal the Supreme Court rendered its decision in *Continental Cas. Co.* v. *Phoenix Const. Co., supra.* The court there had before it for interpretation a policy which is in the exact terms of Transport's policy Number 12-101 in the case at bar, and it there held that para-

---

[7]None of these findings is based upon any conflict in the evidence but are in fact the legal conclusions or conclusions of fact arrived at by the court in interpreting the policies and the lease of the equipment by Mercury to Oil Base. Therefore any errors therein are ones of law and not of fact, and the findings are not binding upon this court (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]; *Continental Cas. Co.* v. *Phoenix Const. Co.*, 46 Cal.2d 423, 429-430 [296 P.2d 801]).

graph 6 of the conditions of the policy[8] in effect incorporate section 415 of the Vehicle Code into the policy and thereby make the driver of the vehicle an insured. By supplemental briefs filed here, counsel for Transport now concede that Scherer was an insured under Transport's basic policy, and that the trial court's findings and conclusions to the contrary are in error.

It is now the contention of Transport and Security, however, that Scherer is not entitled to coverage under the policy issued by Security or the excess policy (No. 12-102) issued by Transport. We are in agreement with this contention insofar as Security's policy is concerned. There is nothing in this policy that purports to cover anyone other than the persons named as insureds therein, nor does it expressly or by implication incorporate any of the conditions or insuring agreements of Transport's primary policy.[9] Scherer was not a person named as an insured in this policy, and as the policy contains no omnibus clause nor any provisions relating to the financial responsibility laws of the state, it is impossible to read into it any coverage of Scherer.

What we have just said as to the Security policy is, however, not applicable to Transport's policy Number 12-102 (excess insurance in the sum of $950,000). This policy is, so far as its insuring agreements and conditions are concerned, identical with the excess Transport policy construed by the Supreme Court in *Continental Cas. Co.* v. *Phoenix Const. Co.*, *supra* (see p. 445). In view of this decision of the Supreme Court we must construe this excess policy as covering Scherer.

The trial court found that Mercury was the owner of the equipment leased by it to Oil Base, and that therefore Hardware's policy did not cover either Mercury or Scherer because of the provision of that policy which excepted from the coverage granted by division 2 of paragraph 3 of the insuring agreements (the omnibus clause) the owner or the employee of the owner of a hired automobile.

We believe that the trial court erred in holding that Mercury was the owner of the equipment within the meaning of the policy. ■ In the absence of circumstances indicating a contrary intention, the terms used in a policy of insur-

---

[8] Financial responsibility laws, the substance of this paragraph having been heretofore quoted.

[9] The terms of this policy are entirely different from those of the excess policy which was construed by the Supreme Court in *Continental Cas. Co.* v. *Phoenix Const. Co., supra.*

ance, like the words used in any other contract, are to be understood in their ordinary and popular sense rather than according to their strict legal meaning (Civ. Code. § 1644; *Pendell* v. *Westland Life Ins. Co.*, 95 Cal.App.2d 766, 770 [214 P.2d 392]; *Bastian* v. *British American etc. Co.*, 143 Cal. 287, 290 [77 P. 63, 66 L.R.A. 255]), although their precise meaning may depend upon the subject matter of the contract and the circumstances surrounding that subject matter and the parties. ■ The word *owner* as applied to motor vehicles is commonly understood to designate the person in whom title is vested either as a legal owner or as a registered owner. That it was so understood by the parties here is evident from the fact that no contention was made by counsel for any of the parties at the trial of this action that the word *owner* as used in the clause of the contract in question had any other meaning. The trial court however, did not apply the ordinary meaning of the word *ownership*, but applied section 654 of the Civil Code which provides that "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others"; and concluded that inasmuch as Mercury had, under its lease, the exclusive right to the possession of the equipment, it was the owner thereof. Followed to its logical conclusion, the court's reasoning would have made Oil Base, rather than Mercury, the owner of the equipment, for Oil Base had the exclusive right to possess and use the equipment at the time of the accident.

■ There can be no doubt that Mercury was the owner of the interest in the equipment which vested in it under its contract with Southwest, but that interest consisted only of the right to temporary possession and use of the equipment subject to the obligation to return the property to Southwest and to use ordinary care for its preservation and safety and to repair any deterioration or injury occasioned by its want of ordinary care (Civ. Code, §§ 1925, 1928, 1929). It was not the owner of the property but only of a limited right in the property.

In the absence of the provisions of the policy upon which the trial court relied in excluding Mercury and Scherer as insureds under the policy, there could be no doubt that both would have been included as insureds under the omnibus clause.

■ Exceptions in a contract of insurance are to be construed "most strongly against the insurer and in favor of the

insured and if susceptible of two meanings, the one most favorable to the insured is to be adopted'' (*Pendell* v. *Westland Life Ins. Co.*, *supra*, p. 770). (*Mah. See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 425 [213 P. 42, 26 A.L.R. 123] ; *Bayley* v. *Employers'* etc. *Corp.*, 125 Cal. 345 [58 P. 7].) The word *owner* is certainly susceptible of meaning the legal or registered owner, and if we assume that it is also susceptible of meaning a person in possession under a lease, still the meaning which will grant coverage rather than exclude coverage should be adopted. If it had been the intention of the insurer to except the letter of a hired vehicle who was not an owner from the coverage granted by the omnibus clause, it would have been a simple matter to have made the exception clear by the addition of the word *letter* to that clause, so as to make it read ''with respect to any hired automobile, to the owner or letter thereof, or any employee of such owner or letter.'' Further, the policy itself negates any intent that the word *owner* should mean one whose rights in the property were only those of a hirer, for it distinguishes between automobiles which the insured had the right to use and possess and which are not owned by or registered in its name from automobiles which are ''owned'' by it.

Respondent has not directed our attention to any case in which the word *owner*, as used in a policy of automobile insurance, was given the meaning assigned to it by the trial court or in which was applied the definition of ownership as set forth in section 654, Civil Code. On the contrary, all the decisions which have been called to our attention have held that a hirer is not an owner. (See *Williams* v. *General Ins. Co.*, 8 Cal.2d 1 [63 P.2d 289] ; *Harbor Supply Co.* v. *Motor Boat Astorian*, 116 Cal.App. 563 [2 P.2d 1004] ; *United Pacific Ins. Co.* v. *Ohio Casualty Ins. Co.*, 172 F.2d 836.)

 Assuming, however, that within the meaning of the policy Mercury was the owner of the equipment, Scherer is nevertheless entitled to coverage. The trial court found that Scherer was the general employee of Mercury but that at the time of the accident was the agent of Oil Base and was acting in the scope and course of his employment as such agent, and that Oil Base then had the right to exercise supervision and control over Scherer and the truck and trailer. Oil Base was therefore liable, as found by the trial court, for any negligence of Scherer, under the doctrine of *respondeat superior*, as stated by the trial court in its memorandum of decision; and unless the exception stated in the

omnibus clause of the policy applies, he was clearly an insured under that clause of the policy. He was also an insured by virtue of paragraph 8 of the conditions of the policy ("Financial Responsibility Laws Coverages A and B") as that clause is interpreted by the Supreme Court in *Continental Cas. Co. v. Phoenix Const. Co., supra.*

█ We believe that the policy is subject to the interpretation that it was only employees of the owner of a hired automobile who were acting for and on behalf and under the control of such owner who were excepted from the exception of the omnibus clause contained in the policy, and that it was not the intent to except from the coverage of the policy those persons who were acting for and under the direction of the named insured and who were entitled to coverage by virtue of clause 8 of the conditions of the policy. This interpretation being the one most favorable to the insured, it must be adopted (*Mah See v. North American Acc. Ins. Co., supra; Pendell v. Westland Life Ins. Co., supra; Bayley v. Employers' etc. Corp., supra*).

We therefore hold that Scherer is an insured under the policy issued by Hardware; that Scherer is an insured under Transport's policy Number 12-101; that Scherer is not an insured nor entitled to coverage under the policy issued by Security; that Scherer is an insured under Transport's policy Number 12-102 and is entitled to indemnity against the claims of Smith and Lowe for the amount of said claims which exceeds the sum of $50,000.[10]

### APPEALS IN THE OIL BASE CASE

What we have said in disposing of Scherer's appeal is applicable to and disposes of all questions raised by the appellants in their appeals from the judgment in the Oil Base case except those questions relating to the proration of the losses among the policies.[11]

---

[10]Inasmuch as Smith's claim has been liquidated in the sum of $360,000 and that amount paid, Transport's contribution to that settlement must be deemed to have been made on behalf of Scherer as well as on behalf of the other persons covered by its excess policy. Policy Number 12-102 attaches to the Lowe claim, as that claim is clearly in excess of the $50,000 over which the policy was excess insurance.

[11]Counsel have extensively argued the question as to whether Scherer was the agent or the special employee of Oil Base, but inasmuch as the trial court found that he was acting for Oil Base in driving the truck and was under its direction and control, we do not see that it is of any importance what terminology is used in describing his status. We will therefore not further treat of that question in this opinion.

The judgment entered in the Oil Base action declared that Oil Base is entitled to coverage and protection under the Hardware policy, that Hardware's liability to Oil Base as to the claim of Smith is in a sum not to exceed $100,000, and as to the claim of Lowe is in a like sum. It further declared that Oil Base was entitled to coverage and protection under Transport's policy Number 12-101 and that Transport's liability under that policy was not to exceed $10,000 for the occurrence in which Smith and Lowe were injured; that Oil Base was entitled to coverage and protection under Security's policy Number T-212; that Security's liability under policy Number T-212 was in the sum of $40,000 on account of *the occurrence* and that liability under that policy *attached only* after the full utilization of the sum of $10,000 provided for in the Transport policy.

It further declared that Oil Base was entitled to coverage and protection under Transport's policy Number 12-102; and that Transport's liability under that policy was in a sum not to exceed $950,000 for said *occurrence* and that liability under said policy *did not attach* until the full utilization of indemnity provided for by policy Number 12-101 and Security's policy Number T-212. It further declared that the Transport policies and the Security policy constituted one integrated insurance structure with an aggregate maximum liability of $1,000,000 and that said insurance (in the sum of $1,000,000) was concurrent insurance with the Hardware policy.[12]

It then declared formulas for the proration of the losses between the integrated policies on the one hand and the Hardware policy on the other. To illustrate the formula first set forth in the judgment, it provides that the $360,000 loss occasioned by the Smith claim should be paid 10/110 by Hardware and 100/110 by the "Transport/Security Mutual structure."

We have reached the conclusion that the trial court was in error in treating the three policies as one policy with a limit of $1,000,000, and that being so in error, the formula by which it decreed the liabilities of the companies should be prorated is likewise in error.

We are of the opinion that as to the Smith claim, Hardware's policy and Transport's policy Number 12-101 should

---

[12]This results in attaching both Security's policy and Transport's policy Number 12-102 to the risk at the same time that policy Number 12-101 and Hardware's policy attached.

prorate the Smith claim until the limits of liabilities of each policy have been fully utilized and that the balance of that loss must be borne by Security and Transport's policy Number 12-102; that as to the Lowe claim, that loss must be prorated between the Hardware policy and Transport's policy Number 12-102.[13]

 There is no question but that except for the Transport policy, Hardware's policy would have been primary insurance in the sense that it would attach to the loss immediately upon the happening of the occurrence; nor can there be any question that except for the Hardware policy, Transport's policy Number 12-101 would have been primary insurance in the sense that it would have immediately attached to the risk upon the happening of the occurrence.

Both Hardware's policy and Transport's policy Number 12-101 contain clauses as to the effect of other insurance covering the risk. Hardware's policy in this regard provides: "If the insured has other insurance against a loss covered by this policy . . . the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile or out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise." The Transport policy provides: "If there is other insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable limits of such other insurance."

Counsel for Transport ingenuously argue that because the Hardware policy qualifies other insurance by the words *valid and collectible* and the Transport policy does not use those words, the Transport policy is excess insurance over the Hardware policy and that therefore the Hardware policy must be exhausted before resort may be had to the $10,000 of coverage provided for by Transport's policy.

This argument is not sound, for as stated by the trial court in its memorandum of decision, "Regardless of differences in phraseology, each says the same thing, and this is what it says: 'If for the same loss that brings this policy into play, the insured is covered, partially or wholly, by other

---

[13]Inasmuch as we have found Scherer to be an insured under all the policies except that of Security, no question remains as to which company would be first liable as the insurer of the ultimate tort-feasor.

insurance, the benefits of that other insurance must be exhausted before recourse may be had under this policy.' '' So construed, neither policy would attach to the risk and the insured would be deprived of coverage. Under this circumstance the court must prorate the loss between the two policies up to their respective limits of liability (*Air etc. Co.* v. *Employers' Liab. etc. Corp.*, 91 Cal.App.2d 129 [204 P.2d 647]; *Oregon Auto. Ins. Co.* v. *United States Fid. & Guar. Co.* (9th Cir., 1952), 195 F.2d 958).

If the loss on the Smith claim is prorated between Hardware and Transport's policy Number 12-101, the result is that the insurance provided by Transport's policy will not have been fully utilized until the insurance provided by Hardware's policy is likewise fully utilized. That is to say, that as Transport's policy Number 12-101 is in the sum of $10,000 and Hardware's is in the sum of $100,000, for each dollar that Transport applies to the loss Hardware must apply ten; so that each policy will be exhausted at the same time and $110,000 of the Smith loss paid.

The trial court found, and its decree declares, that Security's policy did not attach to the risk until the insurance provided by Transport's $10,000 policy was exhausted; and as we have shown this was not exhausted until Hardware's policy was likewise exhausted. Further than this, by the express terms of the second paragraph of its insuring agreements and paragraph G of its conditions, Security's policy did not attach to the risk until not only the indemnity provided by Transport's policy Number 12-101 had been exhausted but until any insurance purchased by the insured for a greater amount than $10,000 had been exhausted. Oil Base was, as we have heretofore shown, a named insured in the Security policy, and the Hardware policy constituted insurance purchased by it in addition to the insurance provided to it by Transport's policy Number 12-101.

Transport's policy Number 12-102 did not attach to the risk until the insurance provided by its policy Number 12-101 and Security's policy had been fully utilized. By its terms and by the findings and decree of the trial court, this policy did not attach to the risk until Transport's $10,000 policy and Security's $40,000 policy were exhausted; and as we have heretofore shown, neither of those policies was exhausted until the indemnity provided by the Hardware policy had been applied to the loss.

The indemnity furnished by the policies should therefore be applied to the Smith loss as follows:

From Transport's policy No. 12-101....$ 10,000.00
From Hardware's policy .............. 100,000.00
From Security's policy ............... 40,000.00
From Transport's policy No. 12-102..... 210,000.00

Total ........................$360,000.00

This application exhausts Transport's policy Number 12-101 and Security's policy. It leaves available under Transport's policy Number 12-102, for application to the payment of the Lowe claim, $740,000; and this insurance is no longer excess insurance because the loss that it was made excess to has been incurred and paid and the policies which it was made excess to have been exhausted. It must therefore prorate the Lowe loss with the $100,000 of indemnity provided for by the Hardware policy. There is therefore a total of $840,000 of insurance available as to the Lowe claim, and the loss on that claim should therefore be prorated 10/84 to Hardware and 74/84 to Transport.

Hardware, and Transport under its policy Number 12-101, are both obligated to pay the expense incurred by Oil Base and by Scherer in the defense of the action brought by Smith; this expense is to be prorated in the same ratio as we have held the first $110,000 of the Smith claim should be prorated between them.

Hardware, and Transport under its policy Number 12-102, are obligated to pay the expense incurred by Oil Base and by Scherer in the defense of the action brought by Lowe, these expenses to be prorated in the same ratio as we have held the Lowe claim should be prorated by them.

The judgments are reversed with directions to the trial court to in each case amend its conclusions of law and enter a judgment declaring the relative and respective rights and obligations of the parties to that action in accordance with the views expressed in this opinion. It shall also, in action Number 613386, award judgment to Oil Base as against Hardware in the sum of $100,000, together with interest at 7 per cent, on account of the moneys paid by Oil Base in settlement of the Smith claim; and in the further sum of $1,086.22, together with interest at 7 per cent, on account of attorney's fees and costs incurred by Oil Base in the defense of the actions brought against it by Smith and Lowe, being re-

spectively actions Number 610750 and Number 620224 in the Superior Court, State of California, in and for the County of Los Angeles; and it shall also award judgment in favor of Oil Base and against Transport in the sum of $108.63 on account of the attorney's fees and costs incurred by Oil Base in the aforesaid action.

Oil Base, Transport, Mercury, and Scherer shall recover their costs on appeal against Hardware.

Doran, Acting P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 18, 1956.