[Civ. No. 16741. First Dist., Div. Two. Sept. 25, 1956.]

PEERLESS CASUALTY COMPANY (a Corporation), Plaintiff and Respondent, v. CONTINENTAL CASUALTY COMPANY (a Corporation), Appellant; PRUDENTIAL ASSURANCE COMPANY, LTD. (a Corporation) et al., Cross-Defendants and Respondents.

618

Weinstock, Anderson, Maloney & Chase, Sidney L. Weinstock and John R. Maloney, as Amici Curiae on behalf of Appellant.

Bledsoe, Smith & Cathcart and Wilbur J. Russ for Plaintiff and Respondent.

Hancock, Elkington & Rothert for Cross-Defendants and Respondents.

THE COURT.—In this case we granted a rehearing for the sole purpose of giving further consideration to the question whether one excess insurance policy of the Underwriters at Lloyd's should to some extent contribute in the loss here involved, with respect to which point *Lamb* v. *Belt Cas. Co.*, 3 Cal.App.2d 624 [40 P.2d 311] was called to our attention by the petition for rehearing only. Thereafter *Oil Base, Inc.* v. *Transport Indem. Co.*, 143 Cal.App.2d 453 [299 P.2d 952], which involved a similar point, was decided. Finally, Prudential Assurance Company, Ltd., a corporation, Andrew Weir Insurance Company, Ltd., a corporation and City General Insurance Company, Ltd., a corporation, have been substituted as respondents in place of Underwriters at Lloyd's. The name of the Underwriters at Lloyd's has been retained in this opinion also where the named corporations have succeeded to their rights. In view of the cited decisions we have concluded that the rejection by the trial court of all liability of the Underwriters at Lloyd's must be upheld, as will be stated hereinafter. Otherwise, we assume our former opinion with some revisions necessitated by the interrelation of the problems presented as follows:

This is an appeal on an agreed statement from a declaratory judgment determining the liability of three insurers, relative to the damage caused in one and the same accident. A tractor and trailer, leased by its owner, Nevada Trading Company (further called Nevada) to Vaughn Millwork Company (fur-

ther called Vaughn) and driven by Vaughn's employee Campbell, collided in this state with a truck and trailer which suffered property damage and whose driver was injured. At the time of the accident Nevada had in its name:

1. a policy of comprehensive liability insurance issued by the Peerless Casualty Company (further called Peerless) covering the motor vehicle involved, with a limit for bodily injury of $10,000 for each person injured and of $5,000 for property damage.

2. two policies of excess liability insurance issued by the Underwriters at Lloyd's, London (further called Lloyd's), the first of which provided coverage after exhaustion of the coverage of the above Peerless policy, to which specific reference was made, with a limit for bodily injuries of $15,000 for each person injured (after the $10,000 of the Peerless policy) and $20,000 for property damage (after the $5,000 of the Peerless policy) and the second of which provided coverage after exhaustion of the coverage of the above two policies, with a limit for personal injuries of $175,000 for each person injured (after the above total of $25,000 primary coverage).

Vaughn had at said time in its name one policy of comprehensive liability insurance issued by Continental Casualty Company (further called Continental), with a limit for bodily injuries of $100,000 for each person injured and of $25,000 for property damage.

Each of the above policies provided liability insurance directly to Campbell as an additional insured for the claims ensuing from the accident. Pursuant to an agreement reserving judicial determination of the respective liabilities of the several insurers, Peerless and Lloyd's settled said claims by payment of $5,946.60 for personal injuries and $6,053.40 for property damage. The controversy of the parties relates mainly to the effect to be given to the "other insurance" clauses of the Peerless and Continental policies.

The other insurance clause of the Continental policy reads:

"13. Other Insurance.

"If the insured has other valid and collectible insurance against a loss covered by this policy, the insurance under this policy shall be excess insurance with respect to such loss but shall apply only in the amount by which the applicable limit of liability stated in the declarations exceeds the total applicable limits of liability of such other insurance."

The part of the other insurance clause of the Peerless policy applicable to the circumstances of this case reads:

"N. Other Insurance.

"If the insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limits of liability stated in the declaration bear to the total applicable limit of liability of all valid and collectible insurance against such loss; . . ."

The trial court held that Peerless and Continental were liable for the total amounts of the settlements in proportion of the maximum coverage provided by their respective policies for the two kinds of damage involved. Lloyd's was held not liable on its policies. (The proportionate liability of Peerless does not exhaust the coverage provided by its policy.) Continental appeals, claiming primarily that this decision in prorating the loss, disregards the other insurance clause of its policy. We have concluded that the decision is supported by the authority of *Air Transport Mfg. Co.* v. *Employers' Liab. etc. Corp.*, 91 Cal.App.2d 129 [204 P.2d 647] (hearing in the Supreme Court denied), and should be upheld.

In the Air Transport case, *supra*, a truck rented by Air Transport from American U-Drive and driven by an employee of Air Transport, was involved in an accident in which one person was injured. Air Transport and American U-Drive each had in its name a liability policy with a limit of $25,000 as to the claim of one injured person. The policy in the name of Air Transport issued by Pacific contained an other insurance clause requiring prorating like the Peerless policy in our case. The policy in the name of American U-Drive issued by Employers' contained an other insurance clause reading as follows:

"8. Other Insurance.

"If other valid insurance exists protecting the Insured from liability for such bodily injury, sickness, disease or death or such injury to or destruction of property, this policy shall be null and void with respect to such specific hazard otherwise covered, whether the Insured is specifically named in such other policy or not; provided, however, that if the applicable limit of liability of this policy exceeds the applicable limit of liability of such other valid insurance, then this policy shall apply as excess insurance against such hazard in an amount equal to the applicable limit of liability of this policy

minus the applicable limit of liability of such other valid insurance.''

Both the trial court and the appellate court held that notwithstanding the latter clause Employers' was liable for its proportionate part (half) of the claim. Rejecting other bases of decision sometimes used, the court held that the liability of the insurers should be decided by construction of the other insurance clauses involved and in so doing held, that because of its pro rata clause the Pacific policy did not constitute such unconditional insurance as would render void the policy of Employers' under its clause and that by reason of the latter's policy, that of Pacific afforded only pro rata insurance. Employers' had therefore to bear the remaining portion of the loss.

Appellant tries to distinguish the Air Transport case, *supra,* by the contention that it involves a conflict between a ''pro rata'' clause and an ''escape'' clause, whereas the present case is said to involve a conflict between a ''pro rata'' and an ''excess'' clause, which ''excess'' clause is more regularly granted recognition and preponderance by the courts than an ''escape'' clause. We do not agree. The other insurance clauses, generally inserted in liability insurance policies and given many different formulations are often distinguished in three types: ''Pro rata'' clauses providing for the apportionment of the loss with other valid insurance; ''excess'' clauses providing for liability up to the limits of the policy covering excess loss only after exhaustion of other valid insurance; and ''escape'' clauses providing for avoidance of liability when there is other valid insurance. (See 5 Stan.L.Rev. 147; 38 Minn.L.Rev. 838, 840.) The clauses of Continental in the case before us and of Employers' in the Air Transport case are neither characteristic excess nor characteristic escape clauses. Although the clause of Continental is formulated more like an excess clause and the one of Employers' more like an escape clause their effect is exactly the same and each is a composite of escape and excess elements. Each provides for excess insurance if and insofar only as its coverage exceeds all other valid coverage combined and does not provide for any coverage if its coverage is not so in excess. In the absence of such excess it works as an escape clause, if there is such excess as a modified excess clause (which does not cover excess loss to the limit of its agreed coverage but only to the excess of such limit over other valid coverage). The clause of Continental does not say so expressly as the clause

of Employers' that it shall be void in the absence of an excess of its coverage over all other coverage, but as it applies only in the amount of such excess it does not provide any coverage if there is no excess.

Both in the Air Transport case and in our case there was no such excess. In the Air Transport case the coverage under both policies was the same; in our case the combined coverage of the other policies (Peerless and Lloyd's) is the same as that of Continental with respect to property damage (each $25,000) and exceeds that of Continental with respect to coverage of injury to one person $200,000 as against $100,000). In both cases the clauses compared worked as escape clauses conflicting with pro rata clauses. With respect to the Air Transport case such was recognized expressly by the appellate court which decided it in distinguishing said case in *Norris* v. *Pacific Indem. Co.*, *(Cal.App.) 237 P.2d 666, 672.

Under approximately similar facts and policy provisions a contrary result was reached in *McFarland* v. *Chicago Exp., Inc.*, 200 F.2d 5. In that case Employers,' whose policy had the mixed escape and excess clause, was the insurer of the owner of the truck and the pro rata clause was contained in the policy of the user of the truck, directly responsible for the accident. Such may have influenced the decision although according to its terms the opinion, like the one in the Air Transport case, is based on "a construction of the language employed by the respective insurers." The McFarland opinion, however, starts its reasoning from the other side and holds that because of its escape clause the Employers' policy is not valid and collectible insurance to which the pro rata clause in the other policy applies, on which ground it is concluded that the writer of said policy was not entitled to pro rating with Employers' but must bear the whole loss.

No other cases involving a conflict between an escape clause and a pro rata clause have been found (*Cf.* Ann. 46 A.L.R. 2d 1159, subd. (c), pp. 1167-1168). It is clear that the reasoning used in the above two cases, ostensibly based on construction of the language of the policy clauses but reaching opposite results, cannot be conclusive. It was pointed out in *Oregon Auto Ins. Co.* v. *United States Fidelity & Guar. Co.*, 195 F.2d 958, 960, that such reasoning is "completely circular, depending, as it were, on which policy one happens to read first." Although the language of the policy clauses is the

---

*A hearing was granted by the Supreme Court on January 3, 1952. The final opinion of that court is reported in 39 Cal.2d 420 [247 P.2d 1].

prime material for our consideration, when said clauses are irreconcilable other considerations, expressed or not, must determine the result. The validity of both clauses, leaving the insured unprotected, is generally considered unacceptable. The Oregon case, *supra*, which involves a conflict between an escape clause and an excess clause, rejects all reasoning on the basis of which other cases grant preference to one or the other of the conflicting other insurance clauses and, holding that one cannot rationally choose between the two clauses involved, takes the position that the mutually repugnant clauses should be disregarded and prorating applied as if the policies did not contain any other insurance clauses. Although this solution seems sensible the case stands alone. The great majority of the cases treating a conflict of an excess and an escape clause give effect to the excess clause. (See ann. 46 A.L.R.2d 1159, subd. (b) p. 1165 et seq.; 5 Stan.L.Rev. 147, 148.) The reasonings used to justify this result may not be convincing, the fact must be noted that the decisions in general show favor of excess clauses, disfavor of escape clauses. ██ Such is understandable because an escape clause is less desirable than a pro rata or excess clause in that, without prohibiting other insurance, it deprives the insured, when other insurance is taken out, of some of the protection he expects, whereas pro rata and escape clauses leave him all coverage expected and regulate the distribution of the loss among the several insurers only. The clause contained in the Continental policy before us has the added disadvantage that its partial escape character is more or less camouflaged and does not provide clear warning for the insured. In our case, where the conflict is between an escape clause and a pro rata clause, the reasoning of the Oregon case, *supra*, and the disfavor of escape clauses found in other cases lead to the same result. The proportionate liability of Peerless and Continental must be upheld.

Continental further contends that if prorating is applied, the coverage provided by the Lloyd's policies should also be included. Evidently, the second Lloyd's policy, whose primary limits are not reached by the total damage claims, cannot be involved and the same applies to the personal injury coverage of the first Lloyd's policy, as the primary limit of $10,000 for loss with respect to one person is not reached. A question is, however, presented with respect to the property damage coverage of the first Lloyd's policy because the settlement for property damage, $6,053.40 exceeds the primary

limit of $5,000 contained therefor in said policy, but the primary coverage of $5,000 of Peerless, expressly referred to in said Lloyd's policy, has not been exhausted because of the prorating with the Continental coverage, not expressly referred to in the Lloyd's policy.

Lloyd's defends the exclusion from prorating of this part of its coverage on the basis of the following provisions of its policy, the second paragraph of its insuring agreement, which reads:

"Provided Always that it is expressly agreed that liability shall attach to the Underwriters only after the Primary Insurers have paid or have been held liable to pay the full amount of their respective *ultimate net loss* liability as follows:

"(a) Bodily Injury . . .

"(b) Property Damage

$5,000.00 *ultimate net loss* in respect to each accident, . . ." (Emphasis added.)

and the definition reading:

"2. *Ultimate Net Loss.*—The words 'ultimate net loss' shall be understood to mean the sums paid in settlement of losses for which the Assured is liable *after making deductions for all recoveries,* salvages and other insurances (other than recoveries under the policy/ies of the Primary Insurers), whether recoverable or not . . ." (Emphasis added).

It concludes therefrom that liability under its policy can attach only after Peerless alone has paid $5,000 for property losses of the assured, not counting amounts paid by other insurers. A further provision of its policy reading,

"3. *Attachment of Liability.*—Liability under this Insurance shall not attach unless and until the Primary Insurers shall have admitted liability for the Primary Limit or Limits, or unless and until the Assured has by final judgment been adjudged to pay a sum which exceeds such Primary Limit or Limits."

it explains as adding further conditions to the provisions first stated and as not conflicting with them.

Continental does not deny that the above is a correct construction of the language of the Lloyd's policy as such, but urges that when this language comes in conflict with the other insurance clause of Continental's own policy, Lloyd's language is not decisive but an equitable solution must be found on another basis, as which prorating in accordance with the Oregon case, *supra,* could be considered.

There can be no doubt that when a policy provides coverage

for the excess over primary insurance to a specifically stated amount only, such provision must be given effect. Such insurance fulfills a special need for excess coverage at a special lower premium, comparable to insurance with a certain amount deductible from loss (own risk). However, when the excess clause is so formulated as to give the policy which contains it the advantage, not only over primary coverage to a specific amount, but also over all other unknown insurance which contributes in the loss, together with said specific primary insurance, it is doubtful whether such clause in that respect differs from other general clauses by which insurers try to shift the burden of a loss to possible other insurers and whether it should be held more invulnerable than such other clauses. On the basis of the Oregon case prorating with other insurance exceeding the stated amount of primary insurance might well be defensible. However, as stated before, the solution of the Oregon case is not generally accepted law, and with respect to the problem here under consideration, it is not accepted in California. In a situation very similar to the one in this case and also involving a Lloyd's excess policy, it was held in *Lamb* v. *Belt Cas. Co.*, 3 Cal.App.2d 624, 634 [40 P.2d 311] that because of the prorating between the primary insurers, the excess policy of Lloyd's never attached. The Supreme Court denied a hearing. A case also very much in point is *Oil Base, Inc.* v. *Transport Indem. Co.*, 143 Cal.App.2d 453 [299 P.2d 952]. In that case the lessee of a tractor involved in an accident was protected by the following liability policies: 1. A policy of Hardware with limit of $100,000 for each person, containing a clause which with respect to any non-owned automobile made it excess insurance to all other available insurance. 2. A policy of Transport with a limit of $10,000 for each occurrence containing a provision that, if there was other insurance against an occurrence covered by it, its insurance would be excess insurance above the applicable limits of such other insurance. 3. An excess policy of Security insuring $40,000 for each occurrence in excess of $10,000 ultimate net loss or of such greater amount as the insured shall be covered by primary insurance. 4. An excess policy of Transport with a limit of $950,000 as excess insurance over underlying primary insurance of $10,000 and $40,000. With respect to a loss of $360,000 it was held that the loss should primarily be prorated between the insurance of $100,000 of Hardware and the primary insurance of $10,000 of Transport. Only after these two prorated policies would be

exhausted the first excess policy of Security would attach and the second excess policy of Transport only after exhaustion of the first one. The clauses of the excess policies of Security and Transport were sustained to their full extent, notwithstanding the fact that the policy of Hardware also contained an excess clause. The Supreme Court denied a hearing.

We must conclude that when a policy which provides excess insurance above a stated amount of primary insurance contains provisions which make it also excess insurance above all other insurance which contributes to the payment of the loss together with the specifically stated primary insurance, such clause will be given effect as written. Under this rule the first Lloyd's policy did not attach because the prorating of the Continental and Peerless policies prevented the Peerless policy from being exhausted.

The judgment is affirmed, Continental to pay all costs of the appeal.