[Civ. No. 46576. First Dist., Div. Three. Dec. 8, 1981.]

OLYMPIC INSURANCE COMPANY, Plaintiff and Appellant, v. EMPLOYERS SURPLUS LINES INSURANCE COMPANY, Defendant and Appellant; RALPH ROKEBY-JOHNSON et al., Defendants and Respondents.

COUNSEL

Popelka, Allard, McCowan & Jones, Philip R. McCowan and Michael G. Ackerman for Plaintiff and Appellant.

LaFollette, Johnson, Schroeter & De Haas, B. E. Atkisson and Alfred W. Gerisch, Jr., for Defendant and Appellant.

Hancock, Rothert & Bunshoft and Harlow P. Rothert for Defendants and Respondents.

OPINION

ANELLO, J.*—This is an appeal from a judgment in an action for declaratory relief. The question presented is whether the trial court erred in holding an excess insurer liable where the primary insurance has not been exhausted.

Plaintiff is the Olympic Insurance Company (hereinafter Olympic). In 1967, Olympic had a general insurance agency contract with Landseair under which Landseair was authorized to issue insurance on behalf of Olympic.

---

*Assigned by the Chairperson of the Judicial Council.

On July 19, 1967, there was a midair collision near Hendersonville, North Carolina, between a commercial airliner and a Cessna aircraft owned by Landseair. Both aircraft were destroyed, and 81 persons were killed.

Following the accident, Olympic was named as a defendant in some 71 wrongful death actions on the theory that Olympic was vicariously liable for the acts of Landseair.

On July 19, 1967, Olympic was a subsidiary of the Pacific Finance Company (hereinafter PFC), which in turn was a subsidiary of Transamerica Corporation (hereinafter Transamerica). Olympic was insured as a subsidiary of both its parent corporations.

The trial court determined, and the parties do not contest this determination, that at the time of the accident Olympic had the protection of five insurance policies, as follows:

1. A Pacific Indemnity Company (hereinafter Pacific) policy issued to PFC, with a limit of $20,000 each occurrence.

2. An Insurance Company of North America (hereinafter INA) policy issued to Transamerica, with a limit of $1 million each occurrence.

3. An Employers Surplus Lines Insurance Company (hereinafter Employers) policy number E509711 (hereinafter Employers 711) issued to PFC, written as "specific excess" over the Pacific policy, with a limit of $2 million less the $20,000 provided by the underlying insurance.

4. An Employers policy number E510690 (hereinafter Employers 690) issued to PFC, with a limit of $500,000 in excess of the $2 million provided by the Pacific and Employers 711 policies.

5. Lloyds of London (hereinafter Lloyds) policy number 32132, providing excess umbrella coverage in the amount of $1 million in excess of $2.5 million of underlying insurance.[1]

---

[1] "Lloyds of London" is an insurance clearing house and was sued herein under the name of "Underwriters at Lloyds London." Ralph Rokeby-Johnson, Fidelidade Insur-

Pacific initially accepted the defense of Olympic, then refused to continue to provide a defense, informing INA that the accident was not covered by the Pacific policy. Pacific then tendered $20,000 to Employers in satisfaction of Pacific's obligation to defend and indemnify Olympic. This tender was rejected.

The defense of the wrongful death actions was underwritten by INA, which incurred $142,727.42 in attorneys' fees, costs, and expenses in defense of Olympic. The actions were settled for the sum of $495,000, which was loaned to Olympic by INA.

Olympic then brought this declaratory action to force Pacific, Employers, and Lloyds to contribute to the cost of defense and settlement of the lawsuits.

The trial court decided that the loss should be divided amongst INA, Pacific, and Employers 711 and concluded that Employers 690 and Lloyds provided excess coverage and incurred no liability as a result of the accident.

Employers appealed, contending that the trial court erred in holding them liable when the two underlying policies were not exhausted. Olympic cross-appealed, contending that Lloyds should have been required to contribute to the cost of settlement and defense.

### Terminology

At the outset, it is necessary to define our terms. We must distinguish between levels of insurance coverage and "other insurance" provisions in the insurance policies.

### A. *Types of Coverage*

1. *Primary* coverage is insurance coverage whereby, *under the terms of the policy*, liability attaches *immediately* upon the happening of the occurrence that gives rise to liability. (*Oil Base, Inc.* v. *Transport Indem. Co.* (1956) 143 Cal.App.2d 453, 467 [299 P.2d 952].) Primary insurers generally have the primary duty of defense.

---

ance Company of Lisbon, and Orion Insurance Company Limited have represented Lloyds in this action.

A second Lloyds policy, number 32133, written as specific excess to the first Lloyds policy, also provided coverage to Olympic, but this policy is not involved in this litigation.

2. *"Excess"* or *secondary* coverage is coverage whereby, *under the terms of the policy*, liability attaches only after a predetermined amount of primary coverage has been exhausted.[2] It is not uncommon to have several layers of secondary insurance (e.g., note the layering of coverage in the instant case: Pacific, then Employers 711, then Employers 690, then Lloyds). Secondary insurance is sometimes referred to as "umbrella" insurance. When secondary insurance is written to be excess to identified policies, it is said to be "specific excess."

### B. *"Other Insurance" Clauses*

A problem arises when two or more policies apply at the same level of coverage. Most insurance contracts include some provision attempting to limit the insurer's liability in the event that another insurance policy covers the same loss.

There are several typical forms of "other insurance" clauses:

1. Pro rata. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable for more than his pro rata share of the loss.

2. Excess. This clause provides that if there is other valid and collectible insurance, then the insurer shall not be liable except to the extent that the loss exceeds such other valid and collectible insurance (i.e., this policy shall be excess to other valid and collectible insurance).

3. Escape. This clause provides that the insurer is not liable for any loss that is covered by other insurance (i.e., the existence of other insurance extinguishes insurer's liability to the extent of such other insurance).

### C. *The Policies in the Instant Appeal*

In the light of the above terminology, we examine the policies involved in the instant appeal. The three relevant policies are as follows:

---

[2]A secondary insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy. (See *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 365 [165 Cal.Rptr. 799, 612 P.2d 889].)

1. The Pacific policy. This policy provides: (a) primary coverage to $20,000; (b) an obligation to defend; and (c) an "excess" other insurance clause.

2. The INA policy. This policy provides: (a) primary coverage to $1 million; (b) a duty to defend; and (c) an "excess" other insurance clause.

3. The Employers 711 policy. This policy provides: (a) secondary coverage for the difference between $20,000 and $2 million; (b) an obligation to defend that attaches when the underlying insurance has been exhausted; and (c) an "excess" other insurance clause.

I

PRORATION AMONG PRIMARY INSURERS

Contractual terms of insurance coverage are honored whenever possible. (*General Ins. Co. v. Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 422 [51 Cal.Rptr. 462]; *Home Indemnity Co. v. Mission Ins. Co.* (1967) 251 Cal.App.2d 942, 964 [60 Cal.Rptr. 544].) Often, however, when more than one policy applies to a loss, the policies will contain irreconcilable terms.

In the instant case, the two primary insurers' policies contain "excess" other insurance clauses. The policies thus purport to be excess to each other, and if the terms of each policy are enforced, the insured is deprived of protection. Under these circumstances California courts have consistently ignored the conflicting clauses and prorated the loss among the primary insurers. (See *Air etc. Co. v. Employers' Liab. etc. Corp.* (1949) 91 Cal.App.2d 129 [204 P.2d 647] [conflict between excess clause and pro rata clause results in proration], disapproved on other grounds, *Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 439 [296 P.2d 801, 57 A.L.R.2d 914]; *American Motorists Ins. Co. v. Underwriters at Lloyd's London* (1964) 224 Cal.App.2d 81, 87 [36 Cal.Rptr. 297] [two primary insurers with "excess" clauses results in proration of the loss]; *General Ins. Co. v. Truck Ins. Exch., supra,* 242 Cal.App.2d at p. 423 ["excess" clause v. "escape-excess" clause results in proration]; *Continental Cas. Co. v. Hartford Acc. & Indem. Co.* (1963) 213 Cal.App.2d 78 [28 Cal.Rptr. 606] [three policies with "excess" clauses prorated]; *Athey v. Netherlands Ins. Co.*

(1962) 200 Cal.App.2d 10 [19 Cal.Rptr. 89] [irreconcilable "excess" clauses result in proration].)

*All primary insurance must be exhausted*
*before liability attaches under a*
*secondary policy.*

■ A secondary policy, by its own terms, does not apply to cover a loss until the underlying primary insurance has been exhausted. This principle holds true even where there is more underlying primary insurance than contemplated by the terms of the secondary policy.

In *Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624 [40 P.2d 311] there were two primary policies with pro rata "other insurance" clauses and a secondary policy written as "specific excess" to one of the two primary policies. The court prorated the two primary policies, with the result that neither of the two primary policies was exhausted. Therefore, the secondary policy incurred no liability.

In *Oil Base, Inc.* v. *Transport Indem. Co., supra,* 143 Cal.App.2d at p. 467, the court prorated two primary policies before holding the secondary policy liable. The secondary policy, written as specific excess insurance over a $10,000 policy, thus did not attach until exhaustion of the primary policies (with an aggregate limit of $110,000). " . . . [W]hen a policy which provides excess insurance above a stated amount of primary insurance contains provisions which make it also excess insurance above all other insurance which contributes to the payment of the loss together with the specifically stated primary insurance, such clause will be given effect as written." (*Peerless Cas. Co.* v. *Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 626 [301 P.2d 602].)

In the instant case, we have two primary policies with an aggregate limit of $1.02 million and a settlement amount of $495,000. It is clear, therefore, that when the two primary policies are prorated, neither policy is exhausted.[3] The holdings in *Oil Base, Lamb,* and *Peerless* make it clear that liability under a secondary policy will not attach until all primary insurance is exhausted, even if the total amount of primary insurance exceeds the amount contemplated in the secondary policy.

Olympic contends that this result is inequitable, in that no liability attaches under Employers 711 even though the total settlement is

---

[3]Prorated policies are necessarily exhausted at the same time.

$495,000 and Employers 711 was written to cover liability in excess of $20,000.[4] However, the result is no more inequitable than when a primary insurer, contracting to cover all losses up to a certain limit, finds that a second primary insurance policy has been written, with the result that each primary insurer is liable for only a pro rata share of the loss rather than the entire loss as contemplated in the contract.

We conclude, therefore, that the trial court erred in prorating the loss among INA, Pacific, and Employers. The INA and Pacific policies provide primary coverage, and Employers 711 provides secondary coverage. Primary coverage has not been exhausted, and Employers therefore incurs no liability.

II

APPORTIONMENT OF DEFENSE COSTS

*Defense costs are apportioned among insurers in proportion to liability for the settlement.*

■ Insurance policies will generally be written so that liability for settlement and duty to defend will arise simultaneously. Thus if the loss is within the limits of the primary insurance, the primary insurer will be liable for the entire cost of defense. (*Universal Underwriters Ins. Co. v. Aetna Ins. Co.* (1967) 249 Cal.App.2d 144, 152 [57 Cal.Rptr. 240]; *Signal Companies, Inc. v. Harbor Ins. Co., supra*, 27 Cal.3d 359, 368.)

■ The secondary policy at issue, Employers 711, provides that there is no duty to defend a claim or suit covered by the underlying insurance and that such duty will not arise until the underlying insurance has been exhausted. As we have seen, the "underlying insurance" has not been exhausted, since the loss is within the limits of the primary insurance. Assuming, arguendo, that Pacific's tender of the policy limit to Employers was sufficient to extinguish Pacific's duty to defend, the extinction of Pacific's duty does not create a duty on the part of Employers, for there was still a primary insurer (INA) with a duty to defend.

---

[4]See Note, *Insurance: "Other Insurance" Clauses: Reconciling Conflicting Provisions* (1958) 5 UCLA L.Rev. 157, which discusses the precise issue raised in this appeal.

The general rule is that defense costs will be apportioned among the insurers in accordance with contribution to the payment of the loss, at least in the absence of contractual provisions dictating a contrary result. (*Signal Companies, Inc.* v. *Harbor Ins. Co., supra*, 27 Cal.3d at p. 367; *Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App. 3d 791, 806 [129 Cal.Rptr. 47]; *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 36 [17 Cal.Rptr. 12, 366 P.2d 455].) Nothing in the contracts before us indicates a departure from the general rule. Employers' duty to defend did not arise until the primary insurance was exhausted. The primary insurance was not exhausted, and therefore Employers had no duty to defend and no liability for defense costs. The defense costs should be apportioned between INA and Pacific, the primary insurers liable for payment of the settlement costs.

## III

### THE CROSS-APPEAL

Cross-appellant Olympic contends that Lloyds should be required to contribute to the costs of settlement and defense of the wrongful death actions. The Lloyds policy provided secondary insurance designed to attach upon the exhaustion of scheduled amounts of underlying insurance. In the light of our conclusion that the primary insurance was not exhausted, it is clear that no secondary policy incurred liability.

The judgment is affirmed in part and reversed in part and the cause remanded to the trial court with instructions to enter judgment in accordance with the views expressed herein.

Employers to recover from Olympic its costs on appeal, and Lloyds to recover from Olympic its costs on appeal.

Scott, Acting P. J., and Barry-Deal, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied February 3, 1982.