**INTEL CORPORATION, Defendants Below–Appellant,**

v.

**AMERICAN GUARANTEE & LIABILITY INSURANCE CO., Plaintiff Below–Appellee,**

and

**Lumbermens Mutual Casualty Insurance Co., Liberty Mutual Insurance Co. and Markel American Insurance Co., Defendants Below–Appellees.**

No. 692, 2011.

Supreme Court of Delaware.

Submitted: Aug. 8, 2012.
Decided: Sept. 7, 2012.

---

**13.** 690 A.2d 933 (Del.1997).

**14.** *Id.* at 934.

**15.** *Pena v. State,* 856 A.2d 548, 550 (Del. 2004); *see also Dickens v. State,* 2 A.3d 73, 2010 WL 2889501, at *4 (Del. Jul. 23, 2010).

**16.** *Pena,* 856 A.2d at 550.

Donald J. Wolfe, Esquire, Richard L. Horwitz, Esquire, John A. Sensing, Esquire, of Potter Anderson & Corroon LLP, Wilmington, Delaware; Of Counsel: Lester O. Brown, Esquire, of Perkins Coie LLP, Los Angeles, California; Dan L. Bagatell, Esquire (argued), of Perkins Coie

LLP, Phoenix, Arizona for Appellant Intel Corporation.

William J. Cattie, III, Esquire, of Rawle & Henderson LLP, Wilmington, Delaware; Of Counsel: Kevin T. Coughlin, Esquire (argued), and Robert J. Kelly, Esquire, of Coughlin Duffy LLP, Morristown, New Jersey, for Appellee American Guarantee & Liability Insurance Company.

Stephen F. Dryden, Esquire, of Dryden LLC, New Castle, Delaware; Of Counsel: Wendy Wilcox, Esquire (argued), of Skane Wilcox LLP, Los Angeles, California, for Appellee Lumbermens Mutual Casualty Company.

J. Scott Shannon, Esquire, and Art C., Aranilla, Esquire; of Marshall, Dennehey, Warner, Coleman & Googin, Wilmington, Delaware; Of Counsel: Robert W. Jozwik, Esquire, of Marshall, Dennehey, Warner, Coleman & Googin, Philadelphia, Pennsylvania for Appellee Liberty Mutual Insurance Company.

Mary B. Matterer, Esquire, of Morris James LLP, Wilmington, Delaware; Of Counsel: Irene K. Yesowitch, Esquire, of Meckler Bulger Tilson Marick & Pearson LLP, San Francisco, California, for Appellee Markel American Insurance Company.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Defendant–Below/Appellant Intel Corporation ("Intel") appeals from a Superior Court order granting partial summary judgment in favor of Plaintiff–Below/Appellee American Guarantee & Liability Insurance Co. ("AGLI") in this dispute over the interpretation of an excess insurance

policy under California law.[1] AGLI sought and obtained a declaration from the Superior Court that AGLI had no duty to reimburse Intel for defense costs or indemnity claims in connection with Intel's defense of various antitrust lawsuits, because the underlying insurance policy limits of $50 million were not exhausted as required by the AGLI policy.

Intel contends that the Superior Court erred as a matter of law in holding that AGLI's following form excess liability policy (the "AGLI Policy") was not reasonably susceptible to Intel's reading. Intel reads the AGLI Policy to allow Intel to exhaust the limits of its underlying policy with XL Insurance Company (the "XL Policy") by adding Intel's own contributed payments for defense costs to the amount of Intel's settlement with XL. Under Intel's interpretation, the XL Policy was exhausted and AGLI's duty to defend was triggered. AGLI responds that its policy unambiguously requires the exhaustion of the XL Policy by "payments of judgments or settlements," and that this language does not encompass Intel's own contributed payments for defense costs.[2] We agree with the Superior Court that AGLI's reading is the only reasonable reading, and accordingly, affirm.

### FACTS AND PROCEDURAL HISTORY

During the 2001–2002 policy period at issue, Intel had multiple levels of "stacked" insurance. Intel's first-line policy from Old Republic Insurance Company had a $5 million limit. That policy is not in dispute here. Intel's next-in-line policy was the XL Policy, which provided an additional $50 million in coverage. Above the XL Policy lay various excess insurance policies, starting with the AGLI Policy.

This coverage dispute arises from antitrust litigation brought in 2005 against Intel in the United States District Court for the District of Delaware. The antitrust litigation spawned numerous similar class actions against Intel in other jurisdictions. In 2006, Intel filed a declaratory judgment action in a California state court against XL seeking a declaration that XL had a duty to defend and possibly indemnify Intel. Before the California state court action was judicially resolved, XL and Intel reached a settlement agreement under which XL paid Intel $27.5 million of its $50 million policy limits.

The XL Policy provided that its limits were $50 million for any kind of "ultimate net loss." As earlier noted, above the XL Policy, Intel had multiple excess policies, starting with the AGLI Policy. It is undisputed that Intel incurred significantly more than $50 million in defense costs, which it paid out-of-pocket. Having done that, Intel then turned to its excess insurer, AGLI, for reimbursements of defense costs in excess of the underlying XL limits.

AGLI refused coverage and filed the instant action in the Superior Court. AGLI sought a declaration that it had no liability to Intel under the policies AGLI issued between 2001 and 2009. AGLI also sued fifteen other insurance companies that had issued excess polices to Intel, seeking a declaration of their liability if

1. The Superior Court designated this judgment a final judgment under Superior Court Rule 54(b).

2. This interpretation was adopted not only by the Superior Court, but also the United States District Court for the Northern District of California. See *American Guar. & Liability Ins. Co., v. Intel Corp.*, C.A. No. 09C–01–170, 2010 WL 8590881 (Del.Super. July 29, 2010); *Intel Corp. v. American Guar. and Liability Ins. Co.*, NO. 5:09–CV–0029, 2010 WL 5176088 (N.D.Cal. Dec. 7, 2010).

AGLI were held liable to Intel.[3] The same day, Intel filed a declaratory judgment action in the United States District Court for the Northern District of California, seeking a declaration of AGLI's liability on the AGLI Policy from April 2001 to April 2002. The California District Court action and the Delaware action have proceeded on parallel tracks.

In the Delaware action, the Superior Court granted AGLI's motion for summary judgment. Intel moved for reargument, which was denied. Shortly after the Superior Court granted AGLI's motion for summary judgment, the California District Court granted Intel's motion for summary judgment, finding the XL Policy had been exhausted. But, after AGLI submitted the Delaware Superior Court's opinion reaching a different result, the California District Court vacated its prior order and entered partial summary judgment in favor of AGLI.

Intel appealed the Superior Court ruling to this Court, and appealed the California District Court's adverse ruling to the Ninth Circuit. We now consider the merits of Intel's appeal to this Court.

## ANALYSIS

Intel contends that the Superior Court erred in holding that the AGLI Policy was not reasonably susceptible to Intel's reading, and erroneously granted summary judgment in AGLI's favor. Intel argues that the AGLI Policy is unambiguous, and allows Intel to exhaust the underlying XL Policy limits by adding Intel's own payments for defense costs to XL's settlement payments. In the alternative, Intel argues that, on the question of exhaustion, the policy is at least ambiguous, warranting a construction against the insured under California law.[4]

We review the Superior Court's grant of summary judgment *de novo*.[5] We review questions of contract interpretation *de novo*.[6]

In California, as in Delaware, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation."[7] Courts generally must interpret a contract so "as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."[8] Courts must consider the contract as whole, rather than analyzing specific provisions in isolation.[9] Words should be construed according to their ordinary meaning, "unless used by the parties in a technical sense, or unless a special meaning is given to them by usage."[10]

3. Defendants–Below/Appellees Lumbermens Mutual Casualty Insurance Co., Liberty Mutual Insurance Co., and Markel American Insurance Co. have joined in AGLI's arguments on appeal.

4. There was a question raised on appeal regarding whether Intel's argument on ambiguity was properly presented to the Superior Court below. See Supr. Ct. R. 8. We conclude that the argument was properly raised below, but reject the argument on its merits.

5. *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del.2011) (citing *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1256 (Del.2010)).

6. *ConAgra Foods*, 21 A.3d at 68 (citing *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1254 (Del.2008)).

7. *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1212 (2003).

8. Cal. Civ.Code § 1636.

9. *Id.* at § 1641.

10. *Id.* at § 1644.

The insurance policy's plain language will govern the interpretation "if the language is clear and explicit, and does not involve an absurdity."[11] "A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable."[12] If not eliminated by the language or context of the policy, "ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage."[13]

### Policy Language

The AGLI Policy consisted of a Declarations Page, a Following Form Excess Liability Policy (the "Following Form Policy"), and a series of endorsements to the Following Form Policy. The Following Form Policy sets forth the basic scope of coverage. Section I, entitled "Coverage," provides in relevant part:

A. We will pay on behalf of the insured the sum in excess of the total Underlying Limits of Insurance shown in Item 6.B. of the Declarations that the insured becomes legally obligated to pay as damages.

B. This insurance applies only to damages covered by the Controlling Underlying Policy as shown in Item 6.A. of the Declarations. Except as otherwise provided by this policy, the coverage follows the definitions, terms, conditions, limitations, and exclusions of the Controlling Underlying Policy in effect at the inception of this policy.

Item 6 refers to the XL Policy. The Following Form Policy contains two particularly relevant sections. Section III is entitled "Defense." It provides in part:

A. We will not be required to assume charge of the investigation of any claim or defense of any suit against you.

B. We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for payment under this policy.

Section V is entitled "Conditions." Condition H in Section V, "When Damages are Payable," states:

H. When Damages are Payable

Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item 6.B. of the Declarations.

When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under this policy.

The Following Form Policy was modified by a series of endorsements—but only to the extent of those endorsements.[14] Following Form Endorsement #1 (the

---

11. *Id.* at § 1638.

12. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 33 Cal.Rptr.3d 562, 118 P.3d 589, 598 (2005).

13. *County of San Diego v. Ace Property & Cas. Ins. Co.*, 37 Cal.4th 406, 33 Cal.Rptr.3d 583, 118 P.3d 607, 612–13 (2005) (citing *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal.4th 27, 36 Cal.Rptr.2d 100, 884 P.2d 1048, 1053 (1994)).

14. *See Close–Smith v. Conley*, 230 F.Supp. 411, 417 (D.Or.1964) ("The effect of an endorsement is to modify, to the extent of the endorsement, the terms and conditions of the original policy." (citing *Votaw v. Farmers Automobile–Insurance Exchange*, 15 Cal.2d 24, 97 P.2d 958 (1940))); *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 63 Cal. Rptr.3d 816, 838 (2007) ("An endorsement modifies the basic insuring forms of the policy and is an integral part of the policy.").

"Endorsement") begins with the language: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Paragraph A of the Endorsement first explains that the policy "follows the exact terms and conditions" of the XL Policy, except for certain exceptions not relevant to this appeal. Paragraph B of the Endorsement then states:

> B. Except as noted above, All preprinted terms and conditions of [the Following Form Policy] are deleted to the extent that they are inconsistent with the terms and conditions of the [XL Policy].

Paragraph C of the Endorsement states:

> C. Nothing contained in this Endorsement shall obligate us to provide a duty to defend any claim or suit before the Underlying Insurance Limits shown in Item 6 of the Declarations are exhausted by payment of judgments or settlements.

### The Following Form Policy Is an Indemnity–Only Policy

AGLI and Intel agree that the Following Form Policy disclaimed any duty to defend, and provided only for a duty to indemnify. Intel argues, however, that Paragraph B of the Endorsement effectively deleted this disclaimer of the duty to defend, and replaced it with language in the underlying XL Policy that did impose a duty to defend. Intel further argues that this newly incorporated duty to defend must be read in conjunction with Condition H of the Following Form Policy. Thus, when Condition H refers to "Coverage under this policy," it refers to both the duty to defend and the duty to indemnify. Intel attempts to reconcile the contradictory language in Paragraph C of the Endorsement—providing that nothing in the Endorsement will obligate AGLI to provide a duty to defend before exhaustion— by arguing that the provision merely rein-

forces that some party, whether Intel or an insurer, must pay $50 million before the AGLI Policy is triggered.

Intel's reading of the AGLI policy purports to do exactly what Paragraph C of the Endorsement forbids: obligate AGLI to provide a duty to defend before exhaustion of the underlying XL policy by payment of judgments or settlements. Viewing the policy language as a whole, Intel's reading is untenable. Only AGLI's reading, as discussed below, reconciles the language of the Following Form Policy, the underlying XL Policy, and the Endorsement.

The Following Form Policy was and remained an indemnity-only policy. Section I of the Following Form Policy, entitled "Coverage," stated that the coverage followed the underlying XL Policy "[e]xcept as otherwise provided by this policy." And this Following Form Policy, at Section III, specifically disclaimed a duty to defend. Thus, absent any Endorsement or other modifying document, AGLI would have no duty to defend.

A duty to defend was created in this instance, however, by Paragraphs A and B of the Endorsement. Paragraph A provides that the AGLI Policy "follows the exact terms and conditions" of the XL Policy. Because the XL Policy provides a duty to defend, the AGLI Policy includes that duty to defend. Paragraph B further states that "[a]ll preprinted terms and conditions of [the AGLI Following Form Policy] are deleted to the extent they are inconsistent with the terms and conditions of [the XL Policy.]" In other words, the Following Form Policy's exclusion of a duty to defend is deleted as inconsistent with the XL Policy's duty to defend. Thus, the Endorsement created a duty to defend.

■ We agree with AGLI that Paragraph C of the Endorsement limits the application and scope of the duty to defend created by Paragraphs A and B. Paragraph C plainly states that nothing in the Endorsement can be read to obligate AGLI to provide a duty to defend before the $50 million underlying limits have been "exhausted by payments of judgments or settlements." Paragraph C is directly on point in the dispute, and ultimately controls the determination of whether the XL Policy was exhausted.

The phrase "payments of judgments or settlements" in Paragraph C cannot be construed under California precedent to encompass an insured's own payment of defense costs. The term "judgments" generally refers to a decision by some adjudicative body as to the parties' rights. The term "settlements" envisions some agreement between parties as to a dispute between them. Defense costs paid by the insured out-of-pocket do not fall within the plain meaning of either term.

California law does not provide a definitive interpretation of the phrase "payments of judgments or settlements." Although not dispositive of our holding, we note that California courts generally have construed the phrase to exclude cases where the insured "credits" the underlying insurance carrier with the remaining policy limits.[15] That is, courts have required the *actual* payment of the full underlying lim-

its.[16] The requirement of actual payment supports our plain meaning interpretation of "judgments or settlements" to exclude Intel's direct payment of defense costs, and require actual payment by the insurer.

■ We disagree with the Superior Court's interpretation to the extent that the Superior Court concluded that settlement between an insured and an insurer cannot count toward exhaustion under this policy language. We construe the phrase "judgments or settlements," when used in an excess policy, to encompass payments from the insurer to the insured. But that point is not dispositive, because XL's $27.5 settlement payment alone cannot exhaust the $50 million limits.

The California Court of Appeal's decision in *Qualcomm*, although not dispositive, is informative of our interpretation of Paragraph C.[17] The California Court of Appeal framed the issue in *Qualcomm* as follows:

> Qualcomm asks us to hold that when an insured settles with its primary insurer for an amount below the primary policy limits but absorbs the resulting gap between the settlement amount and the primary policy limit, primary coverage should be deemed exhausted and excess coverage triggered, obligating the excess insurer to provide coverage under its policy. It maintains this result does not require the excess carrier to pay any more than it would pay had the primary

**15.** *See Farmers Ins. Exch. v. Hurley*, 76 Cal. App.4th 797, 803–04, 90 Cal.Rptr.2d 697, 701–03 (Cal.Ct.App.1999), *review denied*, (Cal. Feb. 16, 2000) (holding that settlement plus credit does not satisfy exhaustion requirement in UIM context, and noting analogous application in context of excess coverage, where "California courts have consistently interpreted such provisions to mean that there is no excess coverage where the insured settles for less than the full limits of the primary policy")(citing *Community Redevelopment Agency v. Aetna Casualty & Surety Co.*, 50 Cal.App.4th

329, 340, 57 Cal.Rptr.2d 755 (Cal.Ct.App. 1996); *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.App.3d 593, 600, 178 Cal.Rptr. 908 (Cal.Ct.App.1981)).

**16.** *Id.*

**17.** *Qualcomm, Inc. v. Certain Underwriters At Lloyd's, London*, 161 Cal.App.4th 184, 73 Cal. Rptr.3d 770 (2008), *review denied* (Cal. June 11, 2008).

insurer paid its full policy limits, and furthers public policy of encouraging civil settlements.[18]

The Court of Appeal declined to so hold, based on the literal policy language at issue in that case.[19]

Even if *Qualcomm* contained policy language different from that at issue here, the implications of *Qualcomm's* holding for this case are clear. Plain policy language on exhaustion, such as that contained in Paragraph C, will control despite competing public policy concerns. We note that some courts' decisions, including those of Delaware trial courts, could be read to suggest that the opinion of the United States Court of Appeals for the Second Circuit in *Zeig v. Massachusetts Bonding & Insurance Co.* requires a different result.[20] But the California court in *Qualcomm* declined to follow *Zeig*,[21] citing both the clear policy language at issue there and the dispute over *Zeig's* application in other jurisdictions. We find *Zeig* inapplicable here as well: the plain language of the policy controls.

■ The interplay between the Following Form Policy, the Endorsement, and the underlying XL Policy is admittedly complex. The Following Form Policy itself refuses to adopt the duty to defend provided by XL's policy, but a duty to defend is nonetheless added—to a limited extent—through the Endorsement. A complicated policy does not mean, however, that there is no single reasonable interpretation of its language, or that every proffered interpretation will be a reasonable one.

Intel's proposed interpretation hinges on its reading of Condition H. Intel contends that Paragraphs A and B of the Endorsement modified Condition H's definition of "coverage" to incorporate the duty to defend. Condition H provides:

> Coverage under this policy will not apply unless and until the insured or the insured's underlying insurance has paid or is obligated to pay the full amount of the Underlying Limits of Insurance stated in Item 6.B. of the Declarations.

> When the amount of damages is determined, we will promptly pay on behalf of the insured the amount of damages covered under this policy.

Intel's strained interpretation of Condition H cannot be reconciled with the plain language of Condition H or Paragraph C. First, Condition H appears in Section V of the Following Form Policy, several pages after the duty to defend discussed in Section III. The Superior Court properly considered this structure in determining that Condition H is not relevant to the duty to defend. Second, Condition H twice refers to the payment of coverage under "this policy" as "the amount of *damages.*" Nowhere does Condition H refer to "costs" or to "payments" generally. As the California District Court noted, the underlying XL Policy distinguishes between damages and defense costs. This reinforces that Condition H is an indemnity-only provision.

Finally, Intel's interpretation creates an irreconcilable conflict between Condition H and Paragraph C. Intel reads the En-

**18.** *Id.* at 772.

**19.** *Id.* at 772–73.

**20.** 23 F.2d 665, 666 (2d Cir.1928). *See Mills Ltd. P'ship v. Liberty Mut. Ins. Co.,* 2010 WL 8250837, at *9 (Del.Super. Nov. 5, 2010) (following *Zeig* and its progeny to interpret ex-

cess liability policy's exhaustion clause); *HLTH Corp. v. Agric. Excess & Surplus Ins. Co.,* 2008 WL 3413327, at *14–15 (Del.Super. July 31, 2008) (adopting reasoning in *Zeig* ).

**21.** 73 Cal.Rptr.3d at 782–83.

dorsement into Condition H to provide that "[defense or indemnity payments] under this policy will not apply unless and until the insured or the insured's underlying insurance has paid the full amount of the [underlying XL policy limits]." But Paragraph C of the Endorsement expressly states that "[n]othing contained in this Endorsement" will require AGLI to provide a duty to defend until the underlying XL Policy limits "are exhausted by payment of judgments or settlements." Intel's interpretation would read out Paragraph C, violating the basic rule of construction that no part of an agreement should be rendered superfluous.[22]

Paragraph C precludes the use of the Endorsement, on its own or in conjunction with Condition H, to trigger the duty to defend before Paragraph C's requirements as to exhaustion are met. As discussed above, those requirements were not met here.

### Reasonable Expectations of Insurer and Insured

Intel argues that AGLI's reading is unreasonable because it renders the duty to defend broader than the duty to indemnify, or renders AGLI's duty to defend altogether illusory. But, in these circumstances, it would be objectively reasonable for the insured to expect that AGLI's excess coverage would be triggered only after the underlying policy is exhausted. AGLI was a fourth-level excess insurer, requiring exhaustion of a $50 million policy beneath it. It would be reasonable to expect that, in most circumstances, the AGLI Policy would be triggered for indemnity payments and not defense costs. Conditioning the excess insurer's duty to defend by first requiring exhaustion by "payments of judgments or settlements" also increases the likelihood that the underlying insurer will be monitoring the litigation.

### No Need for Extrinsic Evidence

Intel emphasizes that, under California law, extrinsic evidence of the parties' intent may be introduced to determine the existence of a latent ambiguity, even in if the policy language is patently unambiguous in AGLI's favor. Intel argues that at the very least, the matter should be remanded to the Superior Court to permit the introduction of parol evidence.

We conclude that Intel's argument has no merit on the record before us. Intel chose not to introduce any extrinsic evidence in the proceedings below regarding the AGLI Policy and its intended interaction with the XL Policy. We will not remand the matter to allow Intel to now do so.

### Certification Not Necessary

We also conclude that certification to the California Supreme Court is not appropriate in this case. We note that the California Supreme Court declined to hear an appeal from *Qualcomm.* Although this denial of review does not necessarily signal the California Supreme Court's approval of all of the reasoning in the opinion below, it may be interpreted as that court's approval of the judgment.[23] This matter involves

---

**22.** See *Brinderson–Newberg Joint Venture v. Pac. Erectors, Inc.* 971 F.2d 272, 278–79 (9th Cir.1992) (citing Restatement (Second) of Contracts § 203(a) cmt. b (1979)) ("It is well settled that a contract should be interpreted so as to give meaning to each of its provisions: 'Since an agreement is interpreted as a whole, it is assumed in the first instance that

no part of it is superfluous.' "); Cal. Civ.Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

**23.** *DiGenova v. State Bd. of Ed.,* 57 Cal.2d 167, 18 Cal.Rptr. 369, 367 P.2d 865, 871 (1962) ("Although this court's denial of a

the application of established principles of contract interpretation under California law. As such it does not present a question on which there is no controlling precedent.[24]

### Conclusion

AGLI's construction gives meaning to both Condition H and Paragraph C. The former governs the duty to indemnify, and the latter governs the duty to defend. Under the language of Condition H, Intel's payments of damages may trigger AGLI's duty to indemnify. But nothing in Paragraph C suggests that Intel's direct payment of defense costs may trigger AGLI's duty to defend. AGLI's construction comports with the plain meaning of the phrase "judgments or settlements."

AGLI's duty to defend arises from Paragraphs A and B of the Endorsement, which is then limited in scope by Paragraph C of that Endorsement. The meaning of "coverage" in Condition H cannot be read to supersede the unambiguous requirements of Paragraph C. Because AGLI has presented the only reasonable reading of the policy language that reconciles the various provisions, we must affirm. The judgment of the Superior Court is **AFFIRMED**.

---

hearing is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of this court, it does not follow that such a denial is without significance as to our views.")

24. *See* Cal. R. Ct. 8.548(a) ("On request of the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth, the Supreme Court may decide a question of California law if: (1) The decision could determine the outcome of a matter pending in the requesting court; and (2) There is no controlling precedent.").