# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FIRST SOLAR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-10-156 MMJ CCLD |
| | ) | |
| NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, PA and XL | ) | |
| SPECIALITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: April 23, 2021
Decided: June 23, 2021

On Defendant XL Specialty's Motion to Dismiss
**GRANTED**

On Defendant National Union's Motion to Dismiss
**GRANTED**

On Plaintiff First Solar's Motion for Partial Summary Judgment
**DENIED**

## OPINION

Jennifer C. Wasson, Esq., Carla M. Jones, Esq., Potter Anderson & Corroon LLP, Wilmington, Delaware, Adam Ziffer, Esq. (Argued), Meredith Elkins, Esq. (Argued), Cohen Ziffer Frenchman & McKenna LLP, New York, New York, *Attorneys for Plaintiff First Solar, Inc.*

John C. Phillips, Jr., Esq., David A. Bilson, Esq., Phillips McLaughlin & Hall, P.A., Wilmington, Delaware, Charles C. Lemley, Esq. (Argued), Kim Melvin,

Esq., Anna Schaffner, Esq., Wiley Rein LLP, Washington, DC, *Attorneys for Defendant XL Specialty Insurance Company.*

Kurt M. Heyman, Esq. (Argued), Aaron M. Nelson, Esq., Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, Scott B. Schreiber, Esq., Arthur Luk, Esq., Omomah Abebe, Esq., Cole Kroshus, Esq., Arnold & Porter Kaye Scholer LLP, Washington, DC, *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

**JOHNSTON, J.**

2

## FACTUAL AND PROCEDURAL CONTEXT

### *Parties*

This is an insurance coverage dispute. Plaintiff First Solar, Inc. ("First Solar") is a Delaware corporation with its principal place of business in Tempe, Arizona.[1] Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") is a Pennsylvania corporation with its principal place of business in New York.[2] XL Specialty Insurance Company ("XL Specialty") is a is a Delaware corporation with its principal place of business in Connecticut.[3]

### *First Solar's Insurance Policies*

First Solar is seeking coverage for a lawsuit under policies provided by National Union and XL Specialty. National Union issued two relevant policies to First Solar: (1) policy no. 01-593-93-44, which was effective November 16, 2013 to November 16, 2014; and (2) policy no. 01-84274-10, which was effective November 16, 2014 to November 16, 2015 (together, the "Primary Policy").[4] XL Specialty issued policy no. ELU132247-13 and policy no. ELU136925-14

---

[1] Compl. ¶ 9.
[2] *Id.* ¶ 10.
[3] *Id.* ¶ 11.
[4] *Id.* 23.

3

(together, the "XL Specialty Policy") to cover First Solar for the same time period.[5] The XL Specialty Policy follows form to the Primary Policy.[6]

### *Smilovits Action*

On March 15, 2012, First Solar shareholders filed a class action lawsuit in the United States District Court for the District of Arizona.[7] The shareholder suit alleged that First Solar violated federal securities laws under Sections 10b-5 and 20 of the Federal Securities Act of 1934.[8] The shareholder plaintiffs contended that First Solar, its directors, and its officers: (1) misrepresented that it "had a winning formula for reducing manufacturing costs so rapidly and dramatically as to make solar power competitive with fossil fuels"; (2) "perpetuated [its] fraudulent self-portrayal by concealing and misrepresenting the nature and extent of major manufacturing and design defects in [its] solar modules"; (3) misrepresented its financials; (4) artificially inflated its stock prices; (5) allowed individuals to engage in insider trading; (6) manipulated the cost-per-watt metrics; and (7) understated its expenses in violation of General Accepted Accounting Principles ("GAAP").[9] The class period covered April 30, 2008 to February 28, 2012.[10]

---

[5] *Id.* ¶ 24.
[6] *Id.*
[7] *Id.* ¶ 39.
[8] *Id.*
[9] *See* Ex. 1, *Smilovits* Compl.
[10] *Id.*

4

First Solar sought coverage for the *Smilovits* Action from National Union under a policy covering 2011-12.[11] National Union provided coverage for the suit and exhausted the policy.[12]

### Maverick Action

In March 2014, a number of shareholders opted out of the *Smilovits* Action.[13] On June 23, 2015, the opt-out plaintiffs filed the *Maverick* Action.[14] The *Maverick* Action asserted claims for violations of SEC Rules 10b-5 and 20, fraud, negligent misrepresentation, and violations of Arizona statutes.[15] In support of the claims, the *Maverick* plaintiffs alleged that First Solar, its directors, and its officers: (1) misrepresented how close it was to achieving grid parity—"the point at which solar electricity became cost competitive with conventional methods of producing electricity without government subsidies"; (2) concealed defects in First Solar's panels and manufacturing process; (3) concealed problems with First Solar's modules that resulting in increased costs; (4) manipulated the cost-per-watt metrics; (5) misrepresented the value of a pipeline project; (6) falsely represented that it was on track to meet its financial targets; (7) refused to adjust its targets in light of an influx of panels globally; (8) issued false financials that violated GAAP;

---

[11] National Union OB at 2.
[12] *Id.*
[13] Compl. ¶ 41.
[14] *Id.* ¶ 42.
[15] *See* Compl. Ex. E, *Maverick* Compl.

5

and (9) artificially inflated its stock price.[16] The class period in the *Maverick* Action covered May 2011 to December 2011.[17]

First Solar notified National Union of the *Maverick* Action in 2015.[18] XL Specialty was notified of the lawsuit on June 1, 2020.[19] First Solar and the *Maverick* plaintiffs reached a settlement agreement. First Solar agreed to pay $19 million, and the plaintiffs agreed to dismiss the lawsuit.[20]

National Union and XL Specialty denied coverage for the *Maverick* Action under their respective policies.[21] First Solar, National Union, and XL Specialty attempted to resolve the coverage dispute through mediation, but were unsuccessful.[22]

### *Procedural History*

First Solar filed suit in this Court on October 17, 2020 asserting claims for: (1) breach of contract; and (2) declaratory relief. XL Specialty filed a Motion to Dismiss on December 11, 2020. National Union filed a joinder to XL Specialty's motion on December 15, 2020. First Solar filed a Motion for Partial Summary Judgment as to Relatedness on January 28, 2021. The Court heard oral argument

---

[16] *Id.*
[17] *Id.*
[18] Compl. ¶ 48.
[19] *Id.* ¶ 51.
[20] *Id.* ¶ 45.
[21] *Id.* ¶ 52.
[22] *Id.* ¶¶ 60, 61.

on April 15, 2021. The parties submitted post-argument letters to the Court on April 16, 2021 and April 23, 2021.

## STANDARDS OF REVIEW

### *Failure to State a Claim Upon Which Relief Can be Granted*

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[23] The Court must accept as true all well-pleaded allegations.[24] Every reasonable factual inference will be drawn in the non-moving party's favor.[25] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[26]

### *Summary Judgment Standard*

Summary judgment is granted only if the moving party establishes that there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[27] All facts are viewed in a light most favorable to the non-moving party.[28] Summary judgment may not be granted if the record indicates that a material fact is in dispute, or if there is a need to clarify the application of law to

---

[23] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[24] *Id.*
[25] *Wilmington Sav. Fund. Soc., F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[26] *Spence*, 396 A.2d at 968.
[27] Super. Ct. Civ. R. 56(c).
[28] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).

7

the specific circumstances.[29] When the facts permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law.[30] If the non-moving party bears the burden of proof at trial, yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment may be granted against that party.[31]

### *Insurance Contract Interpretation Standards*

The proper interpretation of an insurance policy is a question of law.[32] Policies should be read as a whole.[33] Terms are given their plain and ordinary meaning.[34] Where the terms are unambiguous, "a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[35]

### **ANALYSIS**

### *First Solar's Contentions*

First Solar has moved for summary judgment on the issue relatedness between the *Smilovits* Action and the *Maverick* Action. First Solar argues that the

---

[29] Super. Ct. Civ. R. 56(c).
[30] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[32] *Intel Corp. v. Am. Guarantee & Liab. Ins. Co.*, 51 A.3d 442, 446 (Del. 2012).
[33] *Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 90 (Del. Ch. 2009), *aff'd*, 148 A.3d 633 (Del. 2016).
[34] *Id.*
[35] *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).

8

two lawsuits are not fundamentally identical because they involve different operative facts. For example, the two lawsuits involve different plaintiffs, different allegedly wrongful conduct, different causes of action, and different time periods for the alleged harms. Because the *Smilovits* Action and *Maverick* Action are not identical, the *Maverick* Action is covered by the Primary Policy and the XL Specialty Policy.

### *Defendants' Contentions*

Defendants argue the *Maverick* Action is not covered by the Primary Policy or the XL Specialty Policy because it relates back to the *Smilovits* Action and is a Claim first made in 2012. Because the relevant policies' coverage did not begin until 2013, the *Maverick* Action predates the inception of the policies. Both policies exclude coverage for claims first made prior to the inception date. Therefore, the *Maverick* Action is not covered by either policy.

Defendants further argue that even if the *Maverick* Action is not a Claim first made in 2012, First Solar still is not entitled to coverage because: (1) the Special Matter Exclusion applies to the *Maverick* Action; (2) First Solar violated the policies' notice provisions by failing to provide notice to Defendants about the *Maverick* Action; and (3) First Solar violated the policies' consent-to-settle provisions by failing to obtain consent before settling the *Maverick* Action.

9

## Relatedness and Fundamental Identity

### *Relevant Policy Provisions*

The following policy provisions are relevant to this case. As an initial matter, the XL Specialty Policy states that "[c]overage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the Primary Policy."[36] Therefore, the Court will focus on the terms of the Primary Policy.

Section 7 of the Primary Policy provides:

(a) *Reporting a Claim, Pre-Claim Inquiry or Crisis:* An Organization or an Insured shall, as a condition precedent to the obligations of the Insurer under this policy:

> (1) notify the Insurer in writing of a Claim made against an Insured[.] … as soon as practicable after (i) the Named Entity's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim or Pre-Claim Inquiry; or (ii) the Crisis commences. In all such events, notification must be provided no later than 90 days after the end of the Policy Period or the Discovery Period (if applicable).

(b) *Relation Back to the First Reported Claim or Pre-Claim Inquiry:* Solely for the purpose of establishing whether any subsequent Related Claim was first made … during the Policy Period or Discovery Period (if applicable), if during any such period:

> (1) A Claim was first made and reported in accordance with Clause 7(a) above, then any Related Claim that is subsequently made against an Insured and that is reported to the Insurer shall be deemed to have been first made at the time that such previously reported Claim was first made…. Claims actually first

---

[36] Compl., Ex. D, XL Specialty Policy, § I.

made or deemed first made prior to the inception date of this policy … are not covered under this policy[.][37]

A Claim is defined as "a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading…."[38] A Related Claim is defined as "a Claim alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were … alleged in a Claim made against an Insured."[39]

Regarding settlements, the Primary Policy provides:

The Insurer shall have the right, but not the obligation, to fully and effectively associate … in the defense and prosecution of any Claim … including, but not limited to, negotiating a settlement…. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs or Pre-Claim Inquiry Costs, without the prior written consent of the Insurer. Such consent shall not be unreasonably withheld.[40]

The Special Matter Exclusion provides:

[T]he Insurer shall not be liable to make any payment for Loss in connection with: (i) any of the Claim(s), notices, events, investigations or actions listed under EVENT(S) below (hereinafter "Events"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any Event(s); or (b) any Claim(s) or Pre-Claim Inquiry(ies) arising from any Event(s); or (iii) any Wrongful Act, underlying facts, circumstances, acts or omissions in any way relating to any Event(s).[41]

---

[37] Compl., Ex. B, Primary Policy § 7.
[38] *Id.* § 13.
[39] *Id.*
[40] *Id.* § 9.
[41] *Id.*, Endorsement No. 8.

11

The Exclusion further states that there is no coverage for Claims:

[A]lleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an Interrelated Wrongful Act (as that term is defined below), regardless of whether or not such Claim . . . involved the same or different Insureds, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.[42]

As related to the Special Matter Exclusion, "Event" is specifically defined to include the "Class Action entitled: Mark Smilovits v. First Solar, Michael J. Ahern et al. USDC District of Arizona No. 2:12-cv-00555-DGC."[43] Finally, "Interrelated Wrongful Event" is defined as "(i) any fact, circumstance, act or omission alleged in any Event(s) and/or (ii) any Wrongful Act which is the same as, similar or related to or a repetition of any Wrongful Act alleged in any Event(s)."[44]

### Case Precedent

The issues of relatedness and relating back turn on whether or not the *Maverick* Action is "a Claim alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were … alleged in" the *Smilovits* Action. A number of cases have interpreted similar

---

[42] *Id.*
[43] *Id.*
[44] *Id.*

12

insurance provisions and applied the language to situations that are factually similar to this case.

In *Pfizer Inc. v. Arch Insurance Company*,[45] an insured sought coverage for a class action lawsuit. The insurers had denied coverage for the suit and reasoned that it arose out of a related prior class action lawsuit. The relevant insurance policy barred coverage for claims "alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained in any Claim which has been reported . . . under any policy of which this policy is a renewal or replacement or which it may succeed in time."[46] When analyzing the provision, this Court noted that prior cases involving "arising out of" language found "coverage to be precluded only where the two underlying claims are 'fundamentally identical.'"[47]

Ultimately, this Court found that the two class action suits in *Pfizer* were not "fundamentally identical" because, while they shared "thematic similarities," the actions were different in various respects. As this Court summarized in another opinion, there was a "myriad of differences" between the underlying actions in *Pfizer* where "*[d]ifferent* plaintiffs brought *separate* actions against *different*

---

[45] 2019 WL 3306043, at *1 (Del. Super.).
[46] *Id.* at *9-10,
[47] *Id.* at *9 (citing *Med. Depot, Inc.*, 2016 WL 5539879, at *14 (Del. Super.).

13

defendants regarding *different* misrepresentations about *different* products and associated health risks."[48]

Other cases have found that lawsuits are "fundamentally identical" where they involve the "same subject" and "common facts, circumstances, transactions, events, and decisions."[49] The phrase "arising out of" has been held to "impl[y] a causal connection."[50] Similarly, courts have found that "interrelated wrongful acts" are those that have a "common nexus of any fact, circumstance, situation, event, transaction, cause, or series of causally connected facts, circumstances, situations, events, transactions or causes."[51]

Most recently, this Court has summarized the applicable analysis as follows:

[I]n Delaware, when an insurer invokes an exclusion resting on the "relatedness" of Wrongful Acts, coverage for the purportedly-excluded Act will be "precluded only where the two underlying claims are fundamentally identical." To determine whether two claims are fundamentally identical, Delaware courts look to the "subject" of the claims to see if they are "the exact same" and do not merely share "thematic similarities." When doing so, the underlying claimant's "unilateral characterizations" of the claims need not be credited. Instead, the Court will draw reasonable inferences from the complaint as a whole.[52]

---

[48] *Ferrellgas Partners L.P. v. Zurich American Ins. Co.*, 2020 WL 363677, at *8 (Del. Super.).
[49] *United Westlabs, Inc. v. Greenwich Ins. Co*, 2011 WL 2623932, at *11 (Del. Super.).
[50] *Fimbres v. Fireman's Fund Ins. Co.*, 708 P.2d 756, 758 (Ariz. Ct. App. 1985).
[51] *Ferrellgas*, 2020 WL 363677, at *10.
[52] *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *11 (Del. Super.) (internal citations omitted), 2021 WL 772312 (Del. Super.) (certification of interlocutory appeal denied).

14

### *Smilovits Action Compared to Maverick Action*

In the instant case, First Solar argues that the *Smilovits* Action and *Maverick* Action are not fundamentally identical. First Solar points to a series of differences between the underlying actions, including: (1) different plaintiffs; (2) different class period; (3) different allegedly wrongful conduct; (4) different allegations regarding grid parity; (5) different dates of alleged corrective disclosures; (6) different legal basis; and (7) different relief sought. However, the Court need not accept First Solar's "unilateral characterizations of the claims."[53]

After reviewing the complaints for the underlying actions, the Court finds that the *Smilovits* Action and the *Maverick* Action have substantial similarities. The *Maverick* plaintiffs were originally part of the *Smilovits* Action before they opted-out and filed a new suit. The plaintiffs in both actions sued identical defendants. With respect to the class periods, the *Smilovits* Action covered April 2008 to February 2012 while the *Maverick* Action covered May 2011 to December 2011. Although these periods are technically different, they clearly overlap and cover the same 10 months in 2011. Likewise, while the underlying actions do not have identical legal bases for the claims, both suits clearly overlap by alleging violations of SEC Rules 10b-5 and 20. Finally, the disclosures overlap. The underlying actions rely on an overall different number of disclosures, but they both

---

[53] *Id.*

rely on the disclosures made on October 25, 2011; December 14, 2011; and February 28, 2012.

With respect to the allegedly wrongful conduct in the underlying actions, both cases involve the same fraudulent scheme—artificially raising stock prices by misrepresenting First Solar's ability to produce solar electricity at costs comparable to the costs of conventional energy production. In other words, both actions allege that First Solar misrepresented its ability to achieve grid parity. Both actions allege that First Solar concealed defects in the design and manufacturing of modules and panels. Both actions allege that First Solar manipulated its costs, including cost-per-watt metrics. Both actions allege that First Solar issued false financial reports in violation of GAAP. Both actions allege that First Solar's deceptions came to light on February 28, 2012.

The most apparent striking difference between the underlying actions is the type of damages sought by the *Maverick* plaintiffs, with the apparent intent of garnering greater recovery. However, this difference is not enough to separate the underlying actions. The Court finds that the similarities between the *Smilovits* and *Maverick* cases outweigh any differences and go beyond mere "thematic similarities." Both actions are based on the same subject, have a causal connection, and primarily rely on the same facts or occurrences. Therefore, the

16

Court finds that the *Smilovits* Action and the *Maverick* Action are fundamentally identical.

The Court further finds that the terms of the Primary Policy are clear and unambiguous. The *Maverick* Action clearly is a Related Claim. Therefore, under Section 7(b) of the Primary Policy, the *Maverick* Action relates back to the *Smilovits* Action and is a claim first made at the time of the *Smilovits* Action. Under the unambiguous terms of Section 7(b), First Solar's claim for the *Maverick* Action is not covered by the National Union policy. Further, because the claim for the *Smilovits* Action was made in 2012, before the 2013 inception date of the XL Specialty policy, First Solar also is not entitled to coverage under that policy.

## CONCLUSION

The Court finds that the *Smilovits* Action and the *Maverick* Action are fundamentally identical. The Court further finds that the *Maverick* Action is a Claim first made at the time of the *Smilovits* Action in 2012. The unambiguous terms of the Primary Policy and the XL Specialty Policy preclude coverage for claims that predate the inception of the policies. Therefore, First Solar has failed to state a claim for relief.

The Court need not address Defendants' secondary arguments based on the Special Matter Exclusion, notice provisions, or consent-to-settle provisions.

17

**THEREFORE,** Defendant XL Specialty's Motion to Dismiss is hereby **GRANTED.** National Union's Joinder Motion to Dismiss is hereby **GRANTED.** Plaintiff First Solar's Motion for Partial Summary Judgment as to Relatedness is hereby **DENIED.**

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston