## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GUARANTEED RATE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACE AMERICAN INSURANCE | ) | C.A. No. N20C-04-268 MMJ CCLD |
| COMPANY, XL SPECIALITY | ) | |
| INSURANCE COMPANY, AXIS | ) | |
| INSURANCE COMPANY, and | ) | |
| ENDURANCE AMERICAN | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: July 14, 2021
Decided: August 18, 2021

On Plaintiff's Motion for Partial Judgment on the Pleadings

On Insurers' Cross Motion for Judgment on the Pleadings

### OPINION

Brian M. Rostocki, Esq., Reed Smith LLP, Wilmington, Delaware, Lilit Asadourian, Esq. (Argued), Reed Smith LLP, Los Angeles, California, Thomas A. Marrinson, Esq., Reed Smith LLP, Chicago, Illinois, *Counsel for Plaintiff*

Robert J. Katzenstein, Esq., Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, David Newmann, Esq. (Argued), Jessica K. Jacobs, Esq., Hogan Lovells US LLP, Philadelphia, Pennsylvania, *Counsel for ACE American Insurance Company and XL Specialty Insurance Company*

**JOHNSTON, J.**

1

## FACTUAL AND PROCEDURAL CONTEXT

In this insurance coverage case, Plaintiff Guaranteed Rate, Inc. ("GRI") seeks coverage for approximately $18 million in connection with a federal government investigation ("Government Investigation"). The U.S. Attorney's Office for the Northern District of New York and the U.S. Department of Justice initiated an investigation of alleged violations of the False Claims Act.[1] GRI received a Civil Investigative Demand ("CID") on June 27, 2019.

GRI was in the business of underwriting and issuing federally-insured mortgage loans. GRI purchased a Private Company Management Liability Policy from Defendant ACE American Insurance Company ("ACE"). On July 8, 2019, GRI gave notice of the CID to ACE. By letter dated January 13, 2020, ACE denied that the CID constituted a "Claim" under the Policy, and declined to advance defense costs.

GRI has filed a Motion for Partial Judgment on the Pleadings on three issues:

(1)     whether the CID was a Claim first made during the Policy period;

(2)     whether exclusions in the Policy, including the Professional Services Exclusion negate ACE's obligations to advance GRI's defense costs; and

---

[1] 31 U.S.C. §§ 3729-3733.

(3)     whether, by refusing to acknowledge the CID as a Claim and refusing to advance GRI's defense costs, ACE breached the Policy.

Defendant ACE[2] filed a Cross Motion for Judgment on the Pleadings.  ACE contends:

(1)     that the Professional Services Exclusion bars coverage under the D&O part;

(2)     that GRI has not pleaded a claim for loss under the EPL part; and

(3)     that GRI's bad faith claim also should be dismissed.

## STANDARD OF REVIEW

In a Rule 12(c) Motion for Judgment on the Pleadings, the Court must consider whether the movant is entitled to judgment as a matter of law.[3]  Such a determination by the Court can be made only where there are no material issues of fact.[4]  The Court must view the facts in the light most favorable to the non-moving party.[5]  The Court also must accept as true all well-pleaded factual allegations.[6]

---

[2] The Motion originally was filed by all insurer defendants.  Defendants XL Specialty Insurance Company and AXIS Insurance Company have been voluntarily dismissed, leaving ACE as the sole movant.

[3] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993) (internal citations omitted).

[4] *Id.*

[5] *Id.*

[6] *OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006).

3

Finally, exhibits attached to the pleadings or incorporated by reference may be considered.[7]

## ANALYSIS

### *Insurance Interpretation Standards*

The proper interpretation of an insurance policy is a question of law.[8] Policies should be read as a whole.[9] Terms are given their plain and ordinary meaning.[10] Where the terms are unambiguous, "a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[11] Coverage provisions are to be read broadly while exclusion provisions should be read narrowly.[12] "The burden of proving the applicability of any exclusions or limitations on insurance coverage lies with the insurer...."[13]

---

[7] *Id.*
[8] *Intel Corp. v. Am. Guarantee & Liab. Ins. Co.*, 51 A.3d 442, 446 (Del. 2012).
[9] *Viking Pump, Inc. v. Century Indem. Co.*, 2 A.3d 76, 90 (Del. Ch. 2009), *aff'd*, 148 A.3d 633 (Del. 2016).
[10] *Id.*
[11] *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982).
[12] *Ferrellgas Partners L.P. v. Zurich Am. Ins. Co.*, 2020 WL 363677, at *13 (Del. Super.).
[13] *Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 388 (D. Del 2002); *see Cirka v. National Union Fire Ins. Co. of Pittsburgh, PA*, 2004 WL 1813283, at *4 (Del. Ch.).

4

*Claim First Made During the Policy Period*

Pursuant to the Policy, "**Claim**" is defined in part as "a civil, administrative or regulatory investigation against the Insured...." "**Wrongful Act**" includes "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by" the Insured. "**Loss**" includes "the damages, judgments, any award of prejudgment and post-judgement interest, settlements and Defense Costs which the Insured becomes legally obligated to pay on account of any Claim first made against the Insured during the Policy Period...for Wrongful Acts to which this Policy applies...." "**Defense Costs**" include "reasonable and necessary costs, charges, fees and expenses incurred by any Insured in defending Claims."

The CID, dated June 22, 2019, was issued pursuant to the False Claims Act "in the course of an investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The investigation concerns allegations that Guaranteed Rate, Inc. violated the Act by originating and underwriting federally-insured mortgage loans that failed to meet applicable quality-control requirements."

GRI received the CID on June 27, 2019. GRI notified ACE of the CID, and provided a copy on July 8, 2019. The Policy period is June 20, 2018 to July 21, 2019.

In *Conduent State Healthcare, LLC v. AIG Specialty Insurance Company*,[14] the Court considered a similar coverage dispute. The Court reviewed split authority regarding whether a CID is or is not a "Claim." The Court found "the authority that supports the CID constituting a 'Claim' more persuasive." The Court held that the alleged fraud being investigated clearly would be a Wrongful Act. Further, the insured was a focus of the investigation. The policy's broad duty to defend required the insurer to provide coverage "whenever a complaint against the insured, read as a whole and with all reasonable inferences made in light most favorable to the policy holder, alleges facts that potentially fall within the scope of coverage."[15] For purposes of determining coverage, there is no distinction between the investigation of, or actually alleging, an unlawful act. The duty to pay defense costs must be "construed broadly, and in favor of coverage whenever factual allegations raise the possibility of liability covered by the policy."[16]

In the instant case, the Court finds that the facts and policy language are consistent with those in *Conduent*. The CID falls within the definition of "Claim" under the Policy. The Claim was first made during the Policy period.

---

[14] 2019 WL 2612829 (Del. Super.).
[15] *Id.* at 5-6.
[16] *Id.* at 6.

6

Therefore, Plaintiff's Motion for Partial Judgment on the Pleadings is granted on this issue.

### *Duty to Advance Defense Costs*

The obligation to advance defense costs arises when the underlying action states a claim covered by the insurance policy.[17]   The Court reviews the causes in the underlying action as a whole, considering all reasonable inferences that may be drawn from the allegations.[18]

Whether alleged facts fall with the scope of coverage is a matter broadly construed.  Doubts and ambiguities should be resolved in favor of coverage.

ACE argues that GRI's request for advancement of defense costs was untimely.  ACE contends that the request must have been made prior to disposition of the investigation.  Additionally, ACE asserts that GRI failed to establish that GRI incurred defense costs in excess of the $2.5 million retention.

The Court finds that "Claim" is defined in the Policy as "a civil, administrative or regulatory investigation against the Insured."  The CID is part of an investigation of alleged violations of the False Claims Act.  Such violations would be Wrongful Acts under the Policy definition.  Therefore, the CID and related investigation

---

[17] *Ferrellgas Partners L.P. v. Zurich American Ins. Co.,* 2020 WL 363677, at *9 (Del. Super).
[18] *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *10 (Del. Super.).

7

constitute a Claim that triggered the duty to advance defense costs under the Policy. Coverage was requested by the July 9, 2019 notice of the CID.

In any event, advancement is subject to repayment, should subsequent proceedings determine that the Policy did not provide coverage. Any relevant Policy retention also will apply. Therefore, GRI is entitled to advancement of defense costs under the Policy. Plaintiff's Motion for Partial Judgment on the Pleadings is granted on this issue.

*Professional Services Exclusion*

Insurance coverage is interpreted broadly to protect the insured's objectively reasonable expectations. Exclusions are strictly and narrowly construed in favor of coverage.[19] The burden is on the insurer to demonstrate that an exclusion applies.[20]

In *Iberiabank Corp. v. Illinois Union Insurance Company*,[21] the underlying case alleged violations of the False Claims Act. In the *qui tam* action, a former Iberiabank employee alleged that Iberiabank had submitted false claims and records to HUD regarding mortgage loans made to borrower clients, in order to secure mortgage insurance from the FHA.[22] The policy was issued specifically to cover professional services liability. The policy defined "Professional Services" as

---

[19] *Medical Depot, Inc. v. RSUI Indemnity Co.*, 2016 WL 5539879, at *7 (Del. Super.).
[20] *Alstrin v. St. Paul Mercury Ins. Co.,* 179 F. Supp. 2d 376, 388 (D. Del. 2002).
[21] 2019 WL 585288 (E.D. La.), *aff'd*, 952 F.3d 339 (5th Cir. 2020).
[22] *Id.* at *1.

8

"services performed by or on behalf of [Iberiabank] for a policyholder or third party client...."[23]

The *Iberiabank* court held that "a plain reading of the unambiguous policy language shows that Iberiabank's [professional services] claim is not covered." The court reasoned that the underlying action accused Iberiabank of committing wrongful acts against HUD by submitting false and fraudulent information to the agency. HUD was not Iberiabank's client. The mortgage borrowers were Iberiabank's clients. The alleged wrongful acts were not committed in the performance of the professional services to the borrower, "but rather in submitting information to HUD." The client borrowers did not make False Claims Act claims and Iberiabank did not provide "Professional Services" to HUD.[24]

Notably, the insurer seeking to deny coverage for Professional Services in *Iberiabank* was Chubb. Chubb successfully asserted that the False Claims Act allegations ***were not Professional Services***. ACE is part of the Chubb Group of insurance companies. ACE now argues that the Professional Services Exclusion in the Policy in this case applies. This means that ACE is contending that the False Claims Act allegations ***are Professional Services***, and therefore coverage should be

---

[23] *Id.* at *4.
[24] *Id.* at 5.

denied because the Professional Services Exclusion applies. In doing so, ACE directly contradicts Chubb's previous position.

In *Gallup, Inc. v. Greenwich Insurance Company*,[25] the underlying litigation was a *qui tam* complaint alleging violations of the False Claims Act by "knowingly mischarging the Government by billing labor to a cost-based contract when the labor was actually performed to meet requirements on other fixed-price contracts, and obtaining contracts through improper influence."[26] This Court ruled that a professional services exclusion did not preclude reimbursement under the policy.[27] The Court reasoned that alleged fraudulent billing practices were not professional services. Because the policy failed to define "professional services," the Court construed the term narrowly against the drafter, and in a manner giving the meaning most beneficial to the insured.

Further, the *Gallup* Court found that the professional services exclusion was drafted so broadly that "virtually any aspect of Plaintiff's business would be 'related' to rendering 'professional services' which conceivably would preclude coverage for all claims made under the Policy. Other courts have commented that interpreting

---

[25] 2015 WL 1201518, at *11 (Del. Super).
[26] *Id.* at *3.
[27] *Id.* at *11.

10

exclusionary provisions so broadly as to vitiate all coverage undermines the purpose of having an insurance policy."[28]

The Professional Services Exclusion in this case provides that the Insurer "shall not be liable for Loss on account of any Claim...alleging, based upon, arising out of, or attributable to any Insured's rendering or failure to render professional services." The term "Professional Services" is not defined in the Policy.

The Court finds that the Professional Services Exclusion was drafted broadly by the Insurer. The Insurer failed to define "Professional Services." The Exclusion must be interpreted narrowly in favor of coverage. The Wrongful Acts alleged in the underlying investigation involve originating and underwriting federally-insured loans that failed to meet applicable quality-control standards. It appears that the duty to meet certain standards was owed most directly to the federal government, not to the mortgage borrowers. GRI was in the business of underwriting and issuing loans to borrowers. Compliance with applicable quality-control standards is not a Professional Service provided directly to borrower clients, such that coverage would be excluded by the Policy's Professional Service Exclusion.

Therefore, the Court holds that the Professional Services Exclusion does not apply to prevent coverage under the Policy. Plaintiff's Motion for Partial Judgment

---

[28] *Id.* at 12.

11

on the Pleadings is granted on this issue. Insurers' Cross Motion for Judgment on the Pleadings is denied on this issue.

### *Employment Practices Liability Coverage Part*

The Policy's Employment Practices Liability Coverage Part ("EPL") provides:

> The Insurer shall pay the Loss of the Insureds which the Insureds have become legally obligated to pay by reason of a Claim first made against them and reported to the Insurer during the Policy Period..., if such Claim is brought and maintained by or on behalf of...any past, present or prospective full-time, part-time, temporary or leased employee(s) of the Company....

GRI asserts that losses incurred in connection with the Carranza Action are covered by the Policy. A former GRI employee filed a *qui tam* complaint under the False Claims Act, alleging that GRI had retaliated against her by terminating her employment.

ACE argues that the Carranza Action did not cause any loss that was part of the Government Investigation and settlement. ACE claims that GRI was not aware of the Carranza Action when GRI agreed to the settlement.

The Court finds that Plaintiff has stated a claim for coverage under the EPL. However, this issue presents several questions of fact at this stage of the proceedings, including:

- when GRI became aware of the Carranza action retaliation claim;

12

- when GRI notified the insurer of the Carranza action;

- whether GRI incurred losses as a result of the Carranza action on the basis of wrongful employment practices; and

- what portion, if any, of the settlement is allocable to the Carranza claim.

Therefore, the Insurers' Cross Motion for Judgment on the Pleadings is denied on this issue.

### *Bad Faith Claim*

In determining other issues, the Court has found that certain questions of fact remain at this stage in the proceedings. Insurers' request for dismissal has been denied.

Therefore, the Court finds that it is premature to decide the validity of a bad faith claim at this time. Insurers' Cross Motion for Judgment on the Pleadings is denied on this issue.

### <u>CONCLUSION</u>

The Court makes the following rulings.

The CID falls within the definition of "Claim" under the Policy, and the Claim was first made during the Policy period. Therefore, Plaintiff's Motion for Partial Judgment on the Pleadings is granted on this issue.

13

The CID and related investigation constitute a Claim that triggered the duty to advance defense costs under the Policy. Coverage was requested by the July 9, 2019 notice of the CID. Advancement is subject to repayment, should subsequent proceedings determine that the Policy does not provide coverage. Any relevant Policy retention also will apply. Therefore, GRI is entitled to advancement of defense costs under the Policy, and Plaintiff's Motion for Partial Judgment on the Pleadings is granted on this issue.

The Professional Services Exclusion does not apply to prevent coverage under the Policy. Plaintiff's Motion for Partial Judgment on the Pleadings is granted on this issue. Insurers' Cross Motion for Judgment on the Pleadings is denied on this issue.

Plaintiff has stated a claim for coverage under the EPL. However, this issue presents several questions of fact at this stage of the proceedings. Therefore, the Insurers' Cross Motion for Judgment on the Pleadings is denied on this issue.

It is premature to decide the validity of a bad faith claim at this time. Insurers' Cross Motion for Judgment on the Pleadings is denied on this issue.

**IT IS SO ORDERED.**

_/s/ Mary M. Johnston_
The Honorable Mary M. Johnston

14